## DURACRAFT CORPORATION *vs.* HOLMES PRODUCTS CORPORATION & another.[1]

Suffolk. December 8, 1997. - March 25, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*"Anti-SLAPP" Statute. Constitutional Law,* Right to petition government. *Statute,* Construction. *Words,* "Matters of public concern."

Discussion of the legislative history of G. L. c. 231, § 59H, the "anti-SLAPP" statute [159-161,162-163], and discussion of identifying features of so-called "SLAPP" suits [161-162].

This court held that there is no requirement in G. L. c. 231, § 59H, the "anti-SLAPP" statute, that the protected exercise of the right of petition involve a matter of "public concern." [163-164]

This court construed the term "based on," appearing in G. L. c. 231, § 59H, the "anti-SLAPP" statute, to require a party filing a special motion to dismiss an asserted "SLAPP" suit to make a threshold showing, through the pleadings and affidavits, that the claims against it are "based on" the party's exercise of its right of petition under law alone and have no substantial basis other than or in addition to the petitioning activities; and once the special movant so demonstrates, the burden shifts to the nonmoving party to show, as provided in the statute, a lack of factual or legal support for the moving party's petitioning activities and injury resulting therefrom. [164-168]

In a civil action, the defendants were not entitled to dismissal of the complaint pursuant to G. L. c. 231, § 59H, the "anti-SLAPP" statute, where the record demonstrated that the claims against the defendants had a substantial basis, arising from a nondisclosure provision in an employment agreement, and were not solely based on the defendants' exercise of their right of petition under law in a prior unrelated proceeding involving the same parties. [168]

CIVIL ACTION commenced in the Superior Court Department on March 21, 1996.

Special motions to dismiss were heard by *Margaret R. Hinkle,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

[1]Francis E. Marino.

Duracraft Corporation *v.* Holmes Products Corporation.

*Dustin F. Hecker* for Holmes Products Corporation.

*Richard J. Yurko* (*Evan M. Fray-Witzer* with him) for Francis E. Marino.

*Edward J. Dailey* (*Lee Carl Bromberg* with him) for the plaintiff.

The following submitted briefs for amici curiae:

*Scott Harshbarger,* Attorney General, *Dorothy Anderson, Edward J. DeAngelo* & *William J. Duensing,* Assistant Attorneys General, for the Commonwealth.

*Alan Garber, Clair A. Carlson* & *Paul D. Boynton,* for Office One, Inc.

MARSHALL, J. We are asked to determine whether the defendants' special motions to dismiss pursuant to G. L. c. 231, § 59H, commonly referred to as the anti-SLAPP statute, are applicable to the plaintiff's claim that the defendant, Francis E. Marino, breached a confidentiality agreement with it, and other related claims, and if so, whether the statutory procedure for early dismissal of such claims is constitutional. We conclude that the Legislature did not intend the anti-SLAPP statute to apply to claims such as those in this case, a result also reached by the Appeals Court in a thoughtful opinion. See *Duracraft Corp. v. Holmes Prods. Corp.,* 42 Mass. App. Ct. 572 (1997). We affirm the judge's interlocutory order denying the defendants' special motions to dismiss the complaint.

1. We summarize the undisputed background facts to the controversy. The plaintiff, Duracraft Corporation (Duracraft), and the defendant, Holmes Products Corporation (Holmes), are direct competitors supplying the market for consumer home appliances. The two companies also are adversaries in adjudicatory proceedings before the Trademark Trial and Appeal Board (TTAB).[2] From 1987 to mid-1990, Marino was employed as a senior executive for Holmes. He subsequently was employed by Duracraft from August, 1990, to August, 1994, and was then again employed by Holmes in December, 1995.

On August 6, 1990, shortly after he was hired by Duracraft, Marino executed a "Nondisclosure and Non-Competition Agreement" with Duracraft. The agreement bound Marino to hold

---

[2]In November, 1992, Holmes Products Corporation (Holmes) commenced an opposition proceeding against Duracraft Corporation (Duracraft) before the TTAB concerning Duracraft's registration of the word "turbo" as a trademark for its portable fans.

confidential information concerning Duracraft's products and processes, except "upon the lawful demand of any governmental agency (including court process)." The agreement further provided that, prior to Marino's making any disclosure in the event of such a demand, "Duracraft shall have the opportunity to review and comment upon the Confidential Information requested and may participate with [Marino] in discussing with such agency concerning the scope and content of the requested Confidential Information." While at Duracraft, Marino was responsible for intellectual property matters, including litigation and applications for patents and trademarks. He served as Duracraft's liaison to counsel and as Duracraft's designated witness in the TTAB proceedings against Holmes.

In December, 1995, more than one year after he had left Duracraft, Marino was rehired by Holmes.[3] On November 30, 1995, shortly before Marino rejoined Holmes, Holmes noticed Marino's deposition in the TTAB proceeding. Duracraft and Holmes offer divergent interpretations of discussions held between Marino and Holmes concerning Marino's deposition, Marino's reemployment with Holmes, any connection between these two events, and whether Duracraft had contemporaneous knowledge of Holmes's rehiring of Marino. After several postponements, Marino's deposition took place on February 7, 1996, by which time Marino was an employee of Holmes. Counsel for Duracraft was present at Marino's deposition and, in light of Marino's nondisclosure agreement with Duracraft, voiced a number of objections.[4]

---

[3]While Marino's nondisclosure obligation to Duracraft continued after he was hired by Holmes, Marino's noncompetition obligation to Duracraft expired one year following his termination date.

[4]At the deposition, Duracraft made timely objections to Holmes's questions eliciting from Marino information that Duracraft claimed might breach confidentiality and fiduciary duties and attorney-client and work product privileges. No judicial or agency adjudicatory order or court process had issued compelling the deposition testimony. Subsequently, on Duracraft's motion, the TTAB ruled that Holmes's deposition of its own employee contravened agency rules against a party taking discovery from itself, and prohibited Holmes from relying on the Marino deposition in that proceeding or for any other purpose. In that order, the TTAB further commented that it was "appalled" and found "totally unacceptable" the "lack of cooperation and civility exhibited by the attorneys, and the excessive motion practice in which they ha[d] engaged," causing inordinate delay and substantially increased costs.

On March 21, 1996, Duracraft filed the complaint that led to this appeal, alleging that Marino had breached his nondisclosure contract with Duracraft and his fiduciary duties to it by his testimony at the deposition and in his discussions with Holmes prior to the deposition.[5] Duracraft alleged that Marino's disclosures also violated its attorney-client and work product privileges. Duracraft secured an ex parte temporary restraining order preventing Holmes from using Marino's deposition testimony in the underlying trademark proceeding. The restraining order was extended pending the defendants' filing, on April 17, 1996, of special motions to dismiss Duracraft's complaint, pursuant to G. L. c. 231, § 59H. After a hearing on May 9, 1996, the judge denied both Duracraft's request for a preliminary injunction and the defendants' special motions to dismiss, from which interlocutory order the defendants filed leave to appeal. On May 7, 1997, the Appeals Court affirmed the denial of the special motions to dismiss. 42 Mass. App. Ct. 572, 583 (1997). We granted the defendants' application for further appellate review.

2. General Laws c. 231, § 59H, inserted by St. 1994, c. 283, § 1, set out in relevant part in the margin,[6] is popularly known

[5]In addition, Duracraft charged Holmes with misappropriation of trade secrets and alleged counts against both Marino and Holmes of unfair competition and unfair or deceptive trade practices pursuant to G. L. c. 93A, § 11.

[6]"In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss. The court shall advance any such special motion so that it may be heard and determined as expeditiously as possible. The court shall grant such special motion, unless the party against whom such special motion is made shows . . . : (1) that the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) that the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

"The attorney general, on his behalf or on behalf of any government agency or subdivision to which the moving party's acts were directed, may intervene to defend or otherwise support the moving party on such special motion.

"All discovery proceedings shall be stayed upon the filing of the special motion under this section; provided, however, that the court, on motion and after a hearing and for good cause shown, may order that specified discovery be conducted. . . .

"If the court grants such special motion to dismiss, the court shall award

as the "anti-SLAPP" law.[7] It was enacted on December 29, 1994, and this case presents the first occasion in which we have considered the statute. Marino and Holmes contend that the deposition testimony given by Marino in the TTAB proceeding is "petitioning activity" protected under the statute, and that any claim by Duracraft based on the giving of that testimony is barred by the statute and must be dismissed. Duracraft counters that the anti-SLAPP statute was not intended to authorize dismissal of an otherwise valid claim, and that, if the statute was to be so construed, then it would violate Duracraft's own constitutionally protected right to petition a court for redress of its grievance.[8]

---

the moving party costs and reasonable attorney's fees . . . .

"As used in this section, the words 'a party's exercise of its right of petition' shall mean any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government." G. L. c. 231, § 59H.

[7] The acronym "SLAPP" (Strategic Lawsuit Against Public Participation) was coined by George W. Pring and Penelope Canan. See Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl. L. Rev. 3, 4 (1989).

[8] The Attorney General has filed two amicus briefs: one supports the constitutionality of the anti-SLAPP statute, differs in some respects with the reasoning of the Appeals Court, and suggests a statutory construction that would be consistent with the judge's refusal to dismiss Duracraft's complaint, see note 17, *infra*. The Attorney General's other amicus brief asks that we take into consideration a case pending in the Appeals Court, Appeals Court No. 97-P-1434, in which the anti-SLAPP statute was successfully invoked to dismiss a civil action by a convicted criminal against a concerned citizen who had witnessed the crime and assisted law enforcement officials. Tuan Nguyen *vs.* David F. Stafford, Middlesex Superior Court No. 96-00238 (May 30, 1997) (special motion to dismiss allowed).

A third amicus brief has been filed by a plaintiff in a Superior Court action, whose complaint has been dismissed pursuant to the anti-SLAPP statute. Office One, Inc. *vs.* Carlos M. Lopez, Norfolk Superior Court No. 96-2519 (July 10, 1997) (special motion to dismiss allowed in part; on reconsideration, special motion to dismiss allowed on remaining counts). While we have considered thoroughly the arguments of these amicus briefs, we refrain from

3. In the preamble to 1994 House Doc. No. 1520, the Legislature recognized that "full participation by persons and organizations and robust discussion of issues before legislative, judicial, and administrative bodies and in other public fora are essential to the democratic process, [and] that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." In order that such "disfavored" litigation could "be resolved quickly with minimum cost to citizens who have participated in matters of public concern," the act amended G. L. c. 231, inserting § 59H, to provide a procedural remedy for early dismissal of the disfavored SLAPP suits.

One lawsuit appears to have been an impetus for introduction of the anti-SLAPP legislation.[9] In 1991, fifteen residents of Rehoboth, concerned with the protection of wetlands draining into the Palmer River, signed a petition opposing a permit for construction of six single-family residences. The developer sued, and the Rehoboth petitioners said they had incurred more than $30,000 in legal fees before the suit was dismissed nine months later.[10]

The typical mischief that the legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects. SLAPP suits have been characterized as "generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Wilcox* v. *Superior Court*, 27 Cal. App. 4th 809, 816-817 (1994), citing Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl. L. Rev. 3, 5-6, 9 (1989). The objective of SLAPP suits is not to win them, but to use litigation to intimidate opponents' exercise of rights of petitioning and speech. *Id.* SLAPP suits target people for "reporting violations of law, writing to government officials, attending public hear-

---

addressing the merits of their cases or how the Appeals Court should dispose of pending appeals, other than to offer the guidance contained in this opinion.

[9]Evidence of contemporaneous legal events to which the Legislature has responded is relevant to our inquiry. See, e.g., *Clegg* v. *Butler*, 424 Mass. 413, 424 (1997).

[10]See Linda Borg, *Legislature OK Bill Curbing Frivolous Suits*, The Providence Journal Bulletin, Jan. 6, 1994, at 1D; Robert Corriea, *Legislature Sends Bill Back to Weld*, The Providence Journal Bulletin, Dec. 21, 1994, at 1D.

ings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstrations." Pring, *supra* at 5.

The Justices of the Supreme Court of New Hampshire issued an advisory opinion on proposed anti-SLAPP legislation and observed that "[i]dentifying SLAPPs, which typically appear as ordinary lawsuits, presents difficulties." *Opinion of the Justices*, 138 N.H. 445, 449 (1994). The New Hampshire Justices then recited objective identifying features: the implication of a defendant's constitutional speech and petitioning rights; the filing of limited types of legal claims; and certain types of persons or organizations who file SLAPP suits. *Id.* Professors Pring and Canan set out four SLAPP suit criteria: (1) a civil complaint or counterclaim (for monetary damages or injunction); (2) filed against nongovernmental individuals or groups; (3) because of their communications to a government body, official, or the electorate; and (4) on an issue of some public interest or concern. Pring, *supra* at 8.

The legislative history in Massachusetts demonstrates that in response to the problem of SLAPP suits the Legislature intended to enact very broad protection for petitioning activities. The Governor, in letters explaining his vetoes of anti-SLAPP bills passed in two successive legislative terms, suggested that the bills, as written, applied "to a broad group of potential claims, sweeping in cases that are far beyond the types of lawsuits which the bill's proponents wish to control." See 1994 House Doc. No. 5604. The Governor's letter regarding 1994 House Doc. No. 3033, an earlier version of the bill, recognized that the statute shifted the normal burden of proof on a motion to dismiss, but went further by erecting "a nearly insurmountable barrier to a suit, thereby transforming the law and creating an absolute privilege for the right to petition, for the first time," citing *McDonald* v. *Smith*, 472 U.S. 479 (1985) (right of petition not absolutely privileged). The Legislature rejected a proposed alternative bill offered by the Governor and legislative opponents, and overrode the Governor's second veto. 1994 Senate J. 1491; 1994 House J. 1306.

We are dubious that the Legislature intended to create an

absolute privilege.[11] We also see no evidence that the statute was intended to reach suits such as this one between two corporate competitors involved in other ongoing litigation, where the special motion may have been deployed not to limit "strategic litigation," but as an additional litigation tactic. In the statute as enacted, the Legislature, however, did not address concerns over its breadth and reach, and ignored its potential uses in litigation far different from the typical SLAPP suit.

In trying to fashion a properly supported way to narrow the statute, the Superior Court judge in this case relied on the House floor debates and on anti-SLAPP statutes enacted in other jurisdictions,[12] and concluded that the Massachusetts anti-SLAPP statute was designed to protect "citizens sued for speaking out on issues of *public* concern."[13] The judge ruled that

---

[11]The Legislature's rejection of a narrower bill need not imply a legislative intent to preclude judicial narrowing of the bill's broad language in order that the courts may effect legislative intent that the statute be applied only to SLAPPs and not to suits arising in wholly different circumstances. "Statutes are to be interpreted, not alone according to their simple, literal or strict verbal meaning, but in connection with their development, their progression through the legislative body, the history of the times, prior legislation . . . . General expressions may be restrained by relevant circumstances showing a legislative intent that they be narrowed and used in a particular sense." *Murphy* v. *Bohn*, 377 Mass. 544, 548 (1979), quoting *Commonwealth* v. *Welosky*, 276 Mass. 398, 401-402 (1931), cert. denied, 284 U.S. 684 (1932). Accord *Quincy City Hosp.* v. *Rate Setting Comm'n*, 406 Mass. 431, 443 (1990). We note in passing that rather than being perceived as constructive criticism offered to tighten the legislation, the Governor's opposition to the anti-SLAPP legislation was viewed as protecting developers' and real estate interests, the typical targets of the bill's proponents. See Nick Tate, *Enviro Lawsuits Take $$ Toll on Activists*, Boston Herald, April 17, 1994, at 6; Frank Phillips, *Approved Bill Would Stifle Developers' SLAPP Suits*, Boston Globe, Nov. 30, 1994, at 45.

[12]One way that other States have narrowed the scope of their anti-SLAPP statutes is to require that petitioning activities seeking the special procedural protections of such statutes be connected with matters of public concern. The Appeals Court in this case documented this element in the anti-SLAPP statutes of California, Delaware, Minnesota, Nevada, New York, Rhode Island, and Washington. See *Duracraft Corp.* v. *Holmes Prods. Corp.*, 42 Mass. App. Ct. 572, 577 n.10 (1997). See also Ga. Code Ann. § 9-11-11.1(b) (Supp. 1997); Neb. Rev. Stat. 25-21, 242 (1995); Okla. Stat. tit. 12, § 1443.1 (1991); Tenn. Code Ann. § 4-21-1002(a) (Supp. 1997). Other than G. L. c. 231, § 59H, we are aware of no anti-SLAPP statute that fails to include "public concern" as an element of the petitioning activity.

[13]Not only was such an interpretation reasonable, but this criterion was one of four that Pring and Canan, in coining the term, used originally to define SLAPP suits. See note 7, *supra*.

Marino's deposition testimony was not protected by the statute because the trademark dispute between Duracraft and Holmes was not a matter of public concern. *Duracraft Corp.* v. *Holmes Prods. Corp.*, 42 Mass. App. Ct. 572, 574-575 (1997). The Appeals Court, however, traced amendments to predecessor bills and documented that the phrase "public concern" was struck from the bill before it was passed in final form. *Id.* at 578. The Legislature may have had many reasons for dropping the phrase, including a fear that courts might find disputes among abutting property owners of insufficient public concern to trigger the statute's protections.[14] But despite expressions in the legislative debate about the need to protect the right of petition on matters of public concern, the phrase was removed from the text of the statute. Accordingly, we agree with the Appeals Court that it is inappropriate for a judge to "reinsert the rejected condition that the moving party's activity must involve a matter of public concern."[15] *Id.* at 579, citing *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914). Accord *Bronstein* v. *Prudential Ins. Co.*, 390 Mass. 701, 706 (1984).

"SLAPPs are by definition meritless suits." Barker, Common Law and Statutory Solutions to the Problems of SLAPPs, 26 Loy. L.A. L. Rev. 395, 399 (1993). See *Wilcox* v. *Superior Court*, 27 Cal. App. 4th 809, 816-817 (1994), citing Pring, SLAPPs: Strategic Lawsuits Against Public Participation, 7 Pace Envtl. L. Rev. 3 (1989). The merit of claims in other contexts is tested by whether there is support for the facts and

---

[14]We recognize that distinguishing matters of public from matters of private concern is not always clear-cut. Such a consideration is reflected in Justice Thurgood Marshall's objection to creating a conditional constitutional privilege for defamation published in connection with an event that is found to be of "public or general concern": "assuming that . . . courts are not simply to take a poll to determine. whether a substantial portion of the population is interested or concerned in a subject, courts will be required to somehow pass on the legitimacy of interest in a particular event or subject," even though courts "are not anointed with any extraordinary prescience." *Rosenbloom* v. *Metromedia, Inc.*, 403 U.S. 29, 79 (1971) (Marshall, J., dissenting).

[15]The Appeals Court attached no interpretive significance to the reference to "public concern" in the bill's preamble, as that court concluded that the enacting part of the statute, seen in the light of legislative history, is plain. *Duracraft Corp.* v. *Holmes Prods. Corp.*, 42 Mass. App. Ct. 572, 579 n.13 (1997), citing *Brennan* v. *The Governor*, 405 Mass. 390, 395-396 (1989). For the same reason, the Appeals Court disregarded statements attributed to the principal proponent of the legislation that the legislation addressed petitioning on "a matter of public concern." *Duracraft Corp., supra* at 579 n.14.

contentions of law put forward. See *Van Christo Advertising, Inc.* v. *M/A-COM/LCS*, 426 Mass. 410, 416 (1998); *Bird* v. *Bird*, 24 Mass. App. Ct. 362, 368 (1987) (stating standard for compliance with Mass. R. Civ. P. 11, 365 Mass. 753 [1974]). Such a test echoes the first prong of the anti-SLAPP statute's test to defeat a special motion to dismiss. The focus of the statutory test, however, is *not* on the plaintiff's claim, but rather on the petitioning activity that the special movant asserts bars the plaintiff's claim: unless the plaintiff can show that the special movant's petitioning activity is "devoid of any reasonable factual support or any arguable basis in law," the statute directs that the plaintiff's claim be dismissed.[16] The Massachusetts statute makes no provision for a plaintiff to show that its own claims are not frivolous.

The statutory test's focus on the petitioning activity of the special movant alone may adequately test a claim *solely* "based on" the petitioning activity: a defamation claim, for example, can be tested by showing that the defendant's petitioning activity was devoid of factual or legal support and thus can overcome a presumption of qualified immunity. In this case, however, focusing on the defendants' petitioning activity and ignoring Duracraft's claims — that a contractual obligation precludes Marino's exercise of otherwise protected petitioning activity — fails to test fully whether Duracraft's claim lacks merit. Many preexisting legal relationships may properly limit a party's right to petition, including enforceable contracts in which parties waive rights to otherwise legitimate petitioning. A quintessential example of such a waiver is a settlement agreement, in which a

---

[16]A standard for summary judgment adopted in *Protect Our Mountain Env't, Inc.* v. *District Court*, 677 P.2d 1361 (Colo. 1984) (*POME*), is a likely source of the standard for evaluating special motions to dismiss in the Massachusetts anti-SLAPP statute. See Pring & Canan, SLAPPS: Getting Sued for Speaking Out 199 & n.73 (1996). The Supreme Court of Colorado announced its standard for protecting petitioners' activities in the absence of any State statute. In *POME*, that court required that "the plaintiff must make a sufficient showing to permit the court to reasonably conclude that the defendant's petitioning activities were not immunized from liability under the First Amendment because: (1) the defendant's administrative or judicial claims were *devoid of reasonable factual support*, or, if so supportable, *lacked any cognizable basis in law* for their assertion; and (2) the primary purpose of the defendant's petitioning activities was to harass the plaintiff or to effectuate some other improper objective; and (3) the defendant's petitioning activity had the capacity to *adversely affect a legal interest* of the plaintiff" (emphasis supplied). *POME, supra* at 1369.

party releases legal claims against an adversary that otherwise properly could be prosecuted by petitioning the court.[17] But neither this example nor contractual or fiduciary relationships in general exhaust the conceivable occasions on which a party assumes obligations that in turn limit the party's subsequent free exercise of speech and petitioning rights. Furthermore, we are aware of no case that has immunized alleged breaches of such preexisting legal obligations based on constitutional protection for the right to petition, whether applying the *POME* standard (*Protect Our Mountain Env't, Inc.* v. *District Court*, 677 P.2d 1361 [Colo. 1984]) or otherwise; nor have we found cases dismissing such claims under anti-SLAPP statutes of other jurisdictions.

Despite the apparent purpose of the anti-SLAPP statute to dispose expeditiously of meritless lawsuits that may chill petitioning activity, the statutory language fails to track and implement such an objective. By protecting one party's exercise of its right of petition, unless it can be shown to be sham petitioning, the statute impinges on the adverse party's exercise of its right to petition, even when it is not engaged in sham petitioning.[18] This conundrum is what has troubled judges and

---

[17]In his amicus brief, the Attorney General urges us to decide this case based on a waiver theory without reaching the constitutional implications. He would have us conclude that, pursuant to the nondisclosure agreement with Duracraft, Marino waived his petitioning rights (or at least limited his freedom to exercise such rights short of a court order) and that his petitioning (deposition testimony) is consequently "devoid of any reasonable factual support or any arguable basis in law." To reach such a conclusion, a fact finder would have to consider evidence relevant to the contract, such as the parties' intent, the express language used, and the circumstances surrounding its formation. See *Spence* v. *Reeder*, 382 Mass. 398, 411 (1981) (effective waivers of constitutional rights, at least in some circumstances, must be express, knowing, and voluntary). Contrary to the focus of the statutory test on Marino's exercise of his petitioning rights, the focus of such an inquiry would be on Duracraft's claim under the nondisclosure agreement, an inquiry similar to that necessary to decide whether Marino breached his contract with Duracraft. Before being able to rule on a special motion to dismiss, a court would have to consider the merits of a matter that the special motion was designed to foreclose. In any event, this record does not establish an adequate basis on which we could conclude that, in signing the nondisclosure agreement, Marino made an effective waiver of his constitutional or statutory petitioning rights.

[18]The Massachusetts statute differs from the anti-SLAPP statutes of other jurisdictions in this respect as well. For example, California tests SLAPP suits by determining whether "the plaintiff has established a probability that the

bedeviled the statute's application.[19] In addition to its constitutional problems, the statute on its face alters procedural and substantive law in a sweeping way, as the motion judge noted in her memorandum of decision. "A matter may be within the letter of a statute and not come within its spirit, if the matter is beyond the mischief intended to be reached or if to include it would require a radical change in established public policy or in the existing law and the act does not manifest any intent that such a change should be effected." *Commissioner of Corps. & Taxation* v. *Dalton*, 304 Mass. 147, 150 (1939).

We must construe statutory provisions, when possible, to avoid unconstitutionality, *id.*, and to preserve as much of the legislative intent as is possible in a fair application of constitutional principles. See *Keniston* v. *Assessors of Boston*, 380 Mass. 888, 905 (1980); *Lowell* v. *Kowalski*, 380 Mass. 663, 670 (1980). The Appeals Court attempted to rescue the statute by interpreting the statutory language "shall grant . . . [the] special motion" as "may" grant it. *Duracraft Corp.* v. *Holmes Prods. Corp.*, *supra* at 582 n.20. Rather than committing decisions on such special motions to dismiss wholly to judicial discretion, we prefer another construction.

Because the Legislature intended to immunize parties from claims "based on" their petitioning activities, we adopt a construction of "based on" that would exclude motions brought against meritorious claims with a substantial basis other than or in addition to the petitioning activities implicated. The special movant who "asserts" protection for its petitioning activities would have to make a threshold showing through the pleadings and affidavits that the claims against it are "based on" the petitioning activities alone and have no substantial basis other

plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1) (West Supp. 1998). New York grants motions to dismiss SLAPP suits, "unless the party responding to the motion demonstrates that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law." N.Y. C.P.L.R. § 3211(g) (McKinney Supp. 1997).

[19]In this case, the Appeals Court notes that literal application of the statutory test and procedure "would create grave constitutional problems where, as here, the plaintiff's action asserts a legitimate, cognizable claim based on a pre-existing contract between the parties . . . . The plaintiff, after all, is simply exercising its right of petition." *Duracraft Corp.* v. *Holmes Prods. Corp.*, *supra* at 581.

than or in addition to the petitioning activities.[20] Once the special movant so demonstrates, the burden shifts to the nonmoving party as provided in the anti-SLAPP statute. See *Wilcox* v. *Superior Court*, 27 Cal. App. 4th 809, 819 (1994). Such a showing by the special movant should serve to distinguish meritless from meritorious claims, as was intended by the Legislature.

Applying this construction to this case, Duracraft submitted to the court a copy of the nondisclosure agreement, which constitutes a substantial basis other than Marino's petitioning activity to support Duracraft's claims. The defendants' special motions therefore must fail. We need not resolve the remainder of the defendants' arguments in this appeal. Even though we hold that Marino may not avail himself of immunity derived from the anti-SLAPP statute, he has not lost recourse to other defenses. We leave to the Superior Court to determine whether the circumstances of Marino's deposition were legitimate and whether he may invoke any other basis for immunizing his deposition statements. The Superior Court, of course, must also determine the meaning of the terms of the contract between Marino and Duracraft, and whether Marino violated any of the contract's provisions.[21]

We affirm the judge's interlocutory order denying the defendants' special motions to dismiss the complaint against them and remand the case to the Superior Court for further proceedings on these and other pending issues between the parties.

*So ordered.*

---

[20]We should also clarify that "based on" does not mean "in response to": although claims and related pleadings filed in court may be classified as petitioning activities, plaintiffs are not thereby immunized from counterclaims filed in response to the claim.

[21]We concur with the Appeals Court on how the trial court on remand should regard the relationship between Duracraft's contract claim and its tort claims. See *Duracraft Corp.* v. *Holmes Prods. Corp.*, *supra* at 583 n.23.