MacDonald, D. Lloyd, J.
Before the Court is the defendants’ motion to dismiss the plaintiffs’ appeal of this Court’s earlier dismissal (per Lopez, J.) of the plaintiffs’ defamation claims.
The defendants’ motion is ALLOWED for the reasons that follow.
Background Facts
The case arises from circumstances surrounding the year 2000 ballot question that related to the banning of greyhound racing in the Commonwealth. The defendant Grey2K is a committee formed under G.L.c. 55 to advocate for the termination of such racing. The individual defendants were members of Grey2K. As part of its advocacy, Grey2K waged a campaign including television advertising and public debate. The plaintiff Charles F. Sarkis (“Sarkis”) is a co-owner of plaintiff Wonderland Greyhound Park, Inc. (“Wonderland”).
Sarkis took a visible role in the opposition to the ballot question. The ballot question failed in the general election held on November 7, 2000 by a margin of 51%-49%. The week before, on November 2, 2000, Sarkis and Wonderland filed this action alleging, inter alia, that they were defamed and slandered by certain television commercials funded by Grey2K.
Shortly thereafter, the defendants filed a motion to dismiss pursuant to the Anti-SLAPP Statute, G.L.c. 231, §59H. As noted above, Judge Lopez allowed the motion. Her decision was rendered on April 13, 2001. Then in October 2001 the Court (Volterra, J.) entered judgment in favor of the defendants and awarded fees and costs in the amount of $33,689.10.
The plaintiffs filed a timely notice of appeal and ordered transcripts of the various hearings leading to the judgment.
The present record is unclear, but it appears that one or more of the hearings were not stenographically transcribed. In any event, transcripts were not thereafter produced. However, on December 13,2001 plaintiffs prepared and served a draft statement of proceedings on the defendants’ counsel pursuant to Mass.R.A.P. 8(c). The defendants’ counsel did not respond.
Over three and a half years then passed without the plaintiffs doing anything else to advance their appeal. In July 2005, with the defendants represented by new counsel, such counsel initiated contact with plaintiffs for the purpose of revisiting the December 2001 draft statement and filing a mutually acceptable version of the same for the appellate record. The plaintiffs did not respond until October 2005, despite a succession of follow-up contacts by counsel for the defendants.
At that point plaintiffs’ counsel invited the defendants to prepare a new draft of the statement of proceedings. The defendants did so, and served the same on the plaintiffs’ counsel on December 29, 2001. Plaintiffs’ counsel did not respond to the proposed draft, and on March 14, 2006 the instant motion to dismiss was filed. In the plaintiffs’ opposition papers to the motion, however, they included a mark-up of the draft statement of proceedings received from the defendants the prior December.
Merits
The principles at play in deciding whether an aggrieved party’s failure diligently to prosecute an appeal justifies dismissal are clear. We begin with the relevant rules.
*174 Mass.R.A.P. 9(c) provides: “In General In a civil or criminal case, upon request by the clerk of the lower court, the appellant shall forthwith perform any act reasonably necessary to enable the clerk to assemble the record . . .”
This obligation and other affirmative obligations under the appellate rules are enforced by Mass.R.A.P. 10(c): “If any appellant in a civil case shall fail to comply with Rule 9(c) or Rule 10(a)(1) or (3), the lower court may, on motion with notice by any appellee, dismiss the appeal, but only upon a finding of inexcusable neglect...”
Mass.R.Civ.P. 41(b)(2) has a substantively parallel provision: “(T)he Court may, in its discretion, dismiss any action for failure of the plaintiff to prosecute or to comply with these rules or any order of court.”
The SJC has been unambiguous as to where the burden lies for the timely perfection of an appeal. “The responsibility for expediting the appeal [is] squarely on the appellant.” Doten v. Doten, 395 Mass. 135, 140 (1985), quoting Mailer v. Mailer, 387 Mass. 401, 407 (1982).
And the Appeals Court has since provided concrete guidance to the trial court by applying the Doten holding to particular fact situations:
We think it clear from these cases and from the Massachusetts Rules of Appellate Procedure that an appellant’s obligation to expedite an appeal comprehends three types of act[s): (1) those which an appellant is expressly mandated by rule to perform (by way of example, see Rule 8(b) and Rule 9(c)(2)); (2) those which a clerk requests under Rule 9(c)(1); and (3) those which are necessary to move the appeal along and which the appellant is capable of performing irrespective of an express mandate or a request by the clerk. It is not the least bit unreasonable or burdensome to expect an appellant to act timely under Rule 8(e) and cure a record deficiency known to him.
Robinson v. Planning Bd. of Wayland, 23 Mass.App.Ct. 920, 921 (1987).
In the case before the Court there was an abject failure by the plaintiffs to press their appeal diligently. Nearly four years passed after they took the initial steps to appeal the Court’s dismissal of their case before they did anything further to advance it. The conclusion is logical that in filing their notice of appeal but thereafter ignoring its prosecution, the plaintiffs sought merely to preserve the option to go through with the appeal. This they are not permitted to do. Doten, 395 Mass. at 140.
It is no excuse that in December 2001 plaintiffs’ counsel forwarded a draft statement of proceedings under Rule 8(c) to defendants’ counsel and that defendants’ counsel did not respond at the time. In such circumstance Rule 8(c) permits an appellant to file the statement directly with the clerk of the trial court for inclusion in the record on appeal. “This is not a case where the appellant has taken every action expected of him under the rules and the record is not assembled for reasons having to do with the misfiring in other parts of the appellate machinery.” Dorrance v. Zoning Bd. of Appeal of N. Attleborough, 7 Mass.App.Ct. 932, 933 (1979).
A strict application of the above principles is especially appropriate here because of the sensitive First Amendment interests at play that underlie the AntiSLAPP statute, pursuant to which the plaintiffs’ case was dismissed in the first place. Judge Lopez in her memorandum and order dismissing the plaintiffs’ case accurately stated that the “purpose of the Anti-SLAPP statute is to protect citizens from lawsuits designed to chill their right to petition the government,” citing Duracraft Corporation v. Holmes Products Corporation, 427 Mass. 156 (1998).[1]
Further, the defendants argue that the continued life of the appeal materially prejudices them. This is because another cycle in the petition drive to ban greyhound racing is approaching. Grey2K’s and similar organizations’ capacity to raise funds in this new cycle to promote such a ban, the defendants submit, would be chilled not only by the fact that the last time around the principals of Grey2K had to defend the plaintiffs’ suit at great expense ($33,689.10) but by the knowledge that the appeal of the plaintiffs’ dismissal was still alive. The latter would signal to potential supporters and donors the prospect of continued expense and diversion of effort. The Court finds the defendants’ argument in this respect entirely convincing.
The plaintiffs stress that “[i]nvoluntaiy dismissal is a drastic sanction which should be utilized only in extreme situations.” Monahan v. Washburn, 400 Mass. 126, 128-29 (1987). The Court agrees. But this is just such a circumstance.
“[T]he situation [the plaintiffs] find[ ] [themselves] in ‘[is] entirely due to [their] own inaction.’ ” Dotin, 395 Mass. at 140, quoting Dorrance, 7 Mass.App.Ct. at 933. The defendants have been prejudiced. Accordingly, the plaintiffs’ neglect was inexcusable, and their case is dismissed.
ORDER
The defendants’ Motion to Dismiss for Failure to Prosecute is ALLOWED, the plaintiffs’ appeal is DISMISSED and FINAL JUDGMENT SHALL ENTER FOR THE DEFENDANTS.

In Duracraft the Court noted that “[t]he typical mischief that the legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects.” id. at 161.