Fabricant, Judith, J.
INTRODUCTION
This action arises from the defendant’s termination of his employment with the plaintiff, and his new employment with the plaintiffs competitor. After the plaintiff filed this action, and achieved partial success in obtaining a preliminary injunction, the defendant filed a two-count counterclaim. Presently before the Court is the plaintiffs special motion to dismiss one count of the counterclaim, based on the so-called “anti-SLAPP” statute, G.L.c. 231, §59H.
For the following reasons, the plaintiffs motion will be allowed.
BACKGROUND
Plaintiff Carl Zeiss Meditec, Inc. (“CZMI”), is a New York corporation with its principal place of business in California. CZMI is in the business of supplying medical technology, particularly for use in the field of ophthalmology. Defendant William Shields is and at all relevant times has been a resident of Massachusetts. In 2004, CZMI hired Shields as its “Sales Director Europe,” with responsibility for managing sales of CZMI’s products in Europe, the Middle East, and Africa. In that capacity, the verified complaint alleges, Shields acquired extensive knowledge of confidential information of CZMI, and had substantial contact with its customers and “thought leaders.” Shields worked out of his Massachusetts home when he was not traveling; he never worked out of CZMI’s California headquarters.
Upon accepting employment with CZMI, Shields entered into an employment agreement (“the Employment Agreement”) which barred him from engaging in activities detrimental to CZMI’s interests during his employment, and “interfering with” CZMI’s business for a period of two years after leaving CZMI. The agreement also obligated him to preserve CZMI’s “confidential information,” and to return any confidential information to CZMI upon the termination of his employment. The Employment Agreement explicitly stated that it did not restrict Shields “from being employed or engaged in any competitive business” after termination of his employment with CZMI.
In April of 2007, Shields resigned from CZMI and began employment with its competitor, Optovue, Inc., as its Vice President of International Sales.[1] Prior to his departure, the verified complaint alleges, Shields transmitted to Optovue certain confidential information belonging to CZMI. After his resignation, the complaint further alleges, Shields failed to return certain media containing confidential information belonging to CZMI. Shields acknowledges transmitting and retaining certain material, but denies misappropriating any confidential information.
CZMI filed its verified complaint in this action on June 7, 2007. The complaint sets forth five counts, including breach of contract (counts I and III), breach of fiduciary duty (count II), and unfair competition (count IV).[2] Count v. seeks a declaratory judgment that “Shields’ employment by Optovue in a sales capacity with responsibility for [Europe, Middle East, and Africa] is a violation of the Employee Agreement and/or his fiduciary duty.”
Upon filing the complaint, CZMI sought a temporary restraining order preventing Shields from continuing his employment with Optovue and from *269 disclosing or otherwise using CZMI’s confidential information. This Court (Gants, J.) entered a TRO, and later a preliminary injunction, barring Shields from using, disclosing, or destroying any confidential information in his possession. The Court did not enjoin Shields from continuing his employment with Op-tovue.
Shields filed his answer and counterclaim on June 29, 2007. The counterclaim alleges that CZMI required Shields to sign the employment agreement, including its non-interference provision, and that CZMI “brought this lawsuit,” claiming that Shields’s employment with Optovue, “and employment in ophthalmic industry sales more generally," violates that provision. Count I of the counterclaim seeks a declaratory judgment that the non-interference provision of the employment agreement is void under Cal. Bus. & Prof. Code §16600. Count II claims unfair competition in violation of Cal. Bus. & Prof. Code §17200 “(b]y the foregoing acts and by attempting to improperly enforce a void and unlawful provision of the Employee Agreement that illegally restrains trade.” CZMI seeks dismissal of count II of the counterclaim, along with attorneys fees and costs, on the ground that count II is based solely on CZMI’s petitioning activity in bringing this action.
DISCUSSION
1. The Statutory Standard.
As Shields points out in his opposition, CZMI’s motion falls well outside the apparent purposes of the anti-SLAPP statute. “The typical mischief that the legislation intended to remedy was lawsuits directed at individual citizens of modest means for speaking publicly against development projects.” Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 161 (1998); see also Demoulas Supermarkets, Inc. v. Ryan, 70 Mass.App.Ct. 259, 261 (2007). The statute was enacted to provide relief from meritless lawsuits “filed merely to intimidate or punish.” Vittands v. Sudduth, 41 Mass.App.Ct. 515, 517 (1996).
The statutory language, however, is broad, and courts are obliged to apply the statute as written. See Duracraft, 427 Mass. at 166-67. Although the statute appears to have been intended to protect petitioning activity on matters of public concern, its language is not so limited, and courts are not free to add a condition not expressed by the legislature. Id. Thus the statute has been applied to purely private disputes involving no issue of public concern. See Office One, Inc. v. Lopez, 437 Mass. 113, 122 (2002); Fabre v. Walton, 436 Mass. 517, 522-25 (2002); McLarnon v. Jokisch, 431 Mass. 343, 347 (2000). Nor does the statutory language limit its reach according to the resources of the parties on either side. See Office One, Inc. v. Lopez, 437 Mass. at 121-22; Baker v. Parsons, 434 Mass. 543, 548-49 (2001). Here, as in some of the cited cases, it appears that the special motion has itself become “an additional litigation tool.” Duracraft, 427 Mass. at 163. Nevertheless, this Court is obliged to apply the statute as written, in accord with the construction given it by these authorities.
To succeed on a special motion to dismiss under the anti-SLAPP statute, the moving party must make a threshold showing that the claim against it is based on petitioning activities alone and has “no substantial basis other than or in addition to the petitioning activities.” Baker, 434 Mass. at 550. If conduct independent of the petitioning activity forms a substantial basis for the claim, the special motion to dismiss must be denied. See Garabedian v. Westland, 59 Mass.App.Ct. 427, 433 (2003); Ayasli v. Armstrong, 56 Mass.App.Ct. 740, 748 (2002). Once the moving party establishes that the claim against it is based solely on petitioning activity, the burden shifts to the non-moving party to show by a preponderance of the evidence (1) that the moving party’s petitioning activity was devoid of any reasonable factual support or arguable basis in law, and (2) that the moving party’s activities caused actual injury to the responding party. See G.L.c. 231, §59H; Duracraft, 427 Mass. at 167-68. The Court considers each of these factors in turn.
2. Petitioning Activity.
General Laws c. 231, §59H defines petitioning activity to include:
any written or oral statement made before or submitted to a... judicial body...; any written or oral statement made in connection with an issue under consideration or review by a . . . judicial body . . . ; any statement reasonably likely to encourage consideration or review of an issue by a . . . judicial body .. . ; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.
The bringing of a lawsuit clearly falls within this definition, as does the making of any statement in connection with pending a lawsuit.
Shields’s counterclaim identifies the conduct that forms the basis for the claim as CZMI’s bringing this lawsuit, and thereby “attempting to improperly enforce a void and unlawful provision of the Employee Agreement.” The counterclaim itself identifies no other basis. In his affidavit in opposition to this motion, Shields points to three other actions of CZMI that he contends contribute to the basis for his claim: 1) certain comments made to him in April 2007 by CZMI’s vice president of human resources; 2) a letter dated April 23, 2007 sent to him by CZMI’s general counsel; and 3) CZMI’s issuance of a press release announcing the litigation.
The comment of the vice president of human resources, according to Shields’s affidavit, was that “I had gotten into the middle of a dispute between Op-tovue and CZM, that I could not talk to CZM *270 customers, that I knew too much, and that I could not say a thing without being in breach of contract.” This comment effectively tracks the provisions of the employment agreement, which prohibits Shields from interfering with CZMI’s customer relationships, and from disclosing its confidential information; in substance, the vice president reminded Shields of his contractual obligations. The general counsel’s letter expressed essentially the same message, providing “a reminder to refrain from engaging in activities con-traiy to your obligations to Zeiss," along with a summary of the provisions of the agreement, as well as suggestions as to legal claims that might arise from certain potential activities. Both communications conveyed an implicit warning that breach would trigger litigation.
The statutory definition does not by its terms encompass statements made in anticipation of litigation that has not yet commenced, although the common law does provide a privilege for such statements. See Sriberg v. Raymond, 370 Mass. 105, 108-09 (1976); Fisher v. Lint, 69 Mass.App.Ct. 360, 366 (2007); Doe v. Nutter McLennan & Fish, 41 Mass.App.Ct. 137, 140 (1996). Even if these statements fall outside the protection of the statute, however, they do not rise to the level of a substantial basis for the claim independent of the suit itself. Indeed, the argument put forth in Shields’s opposition reveals the opposite.
Shields argues that CZMI’s “effort to enjoin Shields from working for Optovue” demonstrates that the general counsel’s letter was intended to interfere with Shields’s employment. The “effort to enjoin" is thus identified as the basis of the claim; the letter is merely ancillary to it. The vice president’s comment, similarly, merely warned of the same anticipated protected petitioning activity; it did not in itself have any identified consequence to Shields. Compare Garabedian v. Westland, 59 Mass.App.Ct. at 433 (in addition to petitioning activity, moving party harassed opposing party’s contractor and conducted intrusive surveillance of property); Ayasli v. Armstrong, 56 Mass.App.Ct. at 748 (moving parties stated intention to do everything they could to stop construction, erected a sign directing those trying to reach properly to an impassable way, placed threatening dogs at property boundary, and hit golf balls onto beach where children played).
The press release announces “the filing of a lawsuit . . . against a former CZMI sales executive who is now employed by CZMI’s direct competitor, Optovue, Inc. . . . The suit alleges that the executive . . . transmitted confidential and proprietary CZMI information to Op-tovue, and that he engaged in a variety of prohibited actions during and subsequent to his CZMI employment. Tire lawsuit requests that he be prohibited from engaging in such conduct. . .” The press release goes on to announce that Optovue filed suit against CZMI in California “(i]n apparent response to CZMI’s filing.” The press release is a statement in connection with litigation that was pending at the time it was issued, and thus falls squarely within the statutory definition of protected activity. Moreover, here again Shields’s own argument reveals that the press release does not provide a basis for his claim independent of the suit. Shields’s opposition characterizes the press release as a “misrepresentation” to the public that “CZM is not seeking to interfere with Mr. Shields’ right to compete, when, in fact, that is precisely what CZM has sought to do in this lawsuit.” Clearly it is the lawsuit, not any statements or omission about it in the press release, that forms the basis of Shields’s claim.
3. Basis in Fact and Law.
Because Shields’s counterclaim is based solely on CZMI’s petitioning activity in bringing this lawsuit, Shields must show that CZMI’s suit is devoid of any reasonable factual support or any arguable basis in law. See DuracrqftCorp., 427 Mass. at 167-68. Shields attempts to meet this requirement by arguing that the contractual provisions CZMI seeks to enforce, particularly the non-interference provision, are unlawful under Cal. Bus. & Prof. Code §16600 insofar as they operate as a restriction on Shields’s ability to obtain lawful employment. That argument fails for the reasons that follow.
First, this Court’s decision to issue a preliminary injunction against Shields establishes that at least some of CZMI’s claims have reasonable factual and legal support. See Fabre, 436 Mass. at 524-25. Although the injunction is not as broad as CZMI sought, and was not accompanied by express findings, the Court’s decision to issue it necessarily reflects a determination that CZMI is likely to succeed at least on its claim of misappropriation of trade secrets, and that the harm CZMI would suffer in the absence of an injunction would outweigh the harm Shields would suffer from the grant of a narrowly drawn injunction limited to that alleged conduct. See GTE Products Corp. v. Stewart, 414 Mass. 721, 722 (1993); Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). This finding necessarily precludes Shields from meeting his burden to show that the entire suit is devoid of any basis in fact or law.
Second, the Court is not persuaded that the California statute on which Shields relies has any application to the employment agreement between these parties. Cal. Bus. & Prof. Code §16600 represents “a strong public policy concerning contracts which would prohibit employment in California . . .” Application Group, Inc. v. Hunter Group, Inc., 61 Cal.App.4th 881, 890 (1998) (emphasis added). In applying §16600, “(t]he operative fact is that California is precluded from the benefits of a business or profession by contract.” Id.
Employment relationships “beyond the borders of California are not brought under California law so as to apply California employment restrictions of . . . section 16600 simply because [a] party has California *271 connections.” Id. “[I]t is plainly not sufficient simply to be employed by a California-based employer ... if the employee is to perform services exclusively beyond the borders of California.” Id. at 905 (internal quotations omitted). The only California connection presented here is that Optovue is based there. Nothing before the Court indicates that Shields works for Optovue in California, or that he would do so but for his contract with CZMI. To the contrary, the information provided is that Shields continues to live in Massachusetts, and that he sells Optovue’s products abroad. The California statute thus has no apparent bearing on the factual or legal basis for CZMI’s claims against Shields.[3]
As a fallback position, Shields points out that Massachusetts law would not prevent him from competing in the absence of a non-competition agreement, even if working for a competitor might risk disclosure of trade secrets. The point is generally correct, but does not save his claim. CZMI’s complaint may overreach to some extent in seeking relief beyond what would reasonably flow from the contractual violations it has alleged, but such overreaching does not render it devoid of any reasonable basis in fact or law. As discussed supra, the Court has already found a likelihood that CZMI will succeed in obtaining some relief on its claim that Shields has misappropriated trade secrets. That alone is enough to prevent Shields from making the showing required of him.
CZMI has met its threshold burden of showing that Shields’s counterclaim is based solely on petitioning activity, and Shields has not met his burden of showing that CZMI’s petitioning activity is devoid of- a reasonable basis in fact or law. Accordingly, the motion must be allowed. CZMI is entitled to its attorneys fees and costs incurred specifically in defense of count II of the counterclaim. It may submit an application for such fees and costs, with appropriate documentation, in accord with Superior Court Rule 9A, within thirty days.[4]
CONCLUSION AND ORDER
For the foregoing reasons, counterclaim-defendant CZMI’s Special Motion to Dismiss Count II of the Counterclaims Pursuant to Anti-SLAPP Statute is ALLOWED.

The pleadings provide no information about Optovue’s location, nor does Shields’s affidavit in opposition to this motion. At argument counsel indicated that Optovue, like CZMI, is based in California, but operates worldwide, and that Shields’s work for Optovue, like his work for CZMI, occurs from his home in Massachusetts and during trips abroad.

his count does not invoke any statutory basis, but appears to rest solely on a common-law theory.

Even if the Court were to apply the California statute, that statute would not bar the non-disclosure provisions of the employment agreement. See Loral Corp. v. Moyes, 174 Cal.App.3d 268, 276 (1985), citing Gordon v. Landau, 49 Cal.2d 690, 694 (1958). Nor does the statute directly bar non-interference provisions such as the one in issue here, although on particular facts such a provision might be found to prohibit competitive employment, which the statute generally prevents. Even then, however, the provision might be found enforceable if it were determined to be “necessary to protect the employer’s trade secrets . . .” Loral Corp, 174 Cal.App.3d at 276, quoting Muggill v. Reuben H. Donnelley Corp., 62 Cal.2d 239, 242 (1965).

CZMI should take care to limit its fee application to charges incurred specifically in defense of count II of the counterclaim. Such charges would appear likely to be limited to services in connection with this motion.