Fabricant, Judith, J.
INTRODUCTION
This action arises from a set of disputes between the two members of Blue Chip Properties, LLC, an entity in the business of real estate development. Eamon O’Marah, the plaintiff here, alleges that the parties entered into an agreement to settle those disputes, and seeks to enforce that agreement. T. Roderick Walkey, the defendant here, denies that the parties agreed to a settlement, and has filed a set of counterclaims. Before the Court are the plaintiffs two motions to dismiss the counterclaims. The first motion seeks dismissal of count VI of the counterclaim, alleging abuse of process, based on the anti-SLAPP statute, G.L.c. 231, §59H. The second motion seeks dismissal of all counts pursuant to Mass.R.Civ.P. 12(b)(6). For the reasons that will be explained, the special motion to dismiss count VI will be allowed, and the other motion will be allowed in part and denied in part.
BACKGROUND
The pleadings establish the following. Under an operating agreement dated April 4, 2006, the parties were the sole members of Blue Chip Properties, LLC. Among the provisions of the operating agreement was an arbitration clause, providing that the parties would submit to arbitration “(a]ny controversy, dispute or claim arising out of or in connection with or relating to this Agreement, or the breach, termination or validity thereof.” During 2006 and into 2007, disputes arose between the parties. Among the disputes were allegations by Walkey that O’Marah had diverted corporate opportunities and wasted corporate assets, that he had failed to provide Walkey with full information, and that he had fraudulently induced Walkey to *424 enter into certain financing obligations. During the summer of 2007, the parties negotiated in an effort to resolve these disputes. On August 29, 2007, while the negotiations were in progress, Walkey filed a request for arbitration with the American Arbitration Association. On August 31,2007, the Friday before Labor Day, O’Marah signed a document captioned “Agreement of Compromise, Settlement and Release.” The document made reference to three exhibits that were not attached and had not yet been prepared. Walkey signed the same document on the next business day, Tuesday, September 4, 2007. Soon thereafter, however, a further dispute arose, efforts to finalize the exhibits broke down, and Walkey took the position that no binding settlement had been reached and that the arbitration would proceed.
O’Marah contends that the signed document (which will be referred to hereinafter as the settlement agreement) was final and binding, and resolved all disputes between the parties. To press that contention, he filed this action on September 12, 2007. His complaint sets forth three counts. Counts I and II allege breach of contract in the failure to cooperate in effectuating the terms of the settlement agreement; count III seeks a declaratory judgment that Walkey is obligated to comply with the terms of the settlement agreement. Walkey responded on September 24, 2007, by filing an answer and counterclaim. The counterclaim asserts a set of factual allegations pertaining to the alleged misconduct by O’Marah that underlay the original disputes between the parties, including allegations regarding misconduct of a similar nature that Walkey contends he learned about only after signing the settlement agreement, and further alleges that the parties negotiated the settlement agreement, but never finalized it. The counterclaim further alleges that O’Marah fraudulently induced Walkey to sign the settlement agreement by misrepresenting O’Marah’s financial resources. Six counts are set forth: count I, alleging breach of the operating agreement; count II, alleging breach of the implied covenant of good faith and fair dealing, again based on the operating agreement; count III, alleging breach of fiduciary duly by diverting corporate opportunities and wasting corporate assets; count IV, alleging fraud in the inducement of Walkey to execute certain financing agreements for projects of the LLC; count V, alleging fraud in inducing Walkey to sign the settlement agreement; count VI, alleging abuse of process; and count VII, seeking a declaratory judgment that the settlement agreement “is not a lawful and binding contract and that Mr. Walkey was entitled to withdraw his offer of settlement,” and that Walkey “is entitled to have this dispute returned to the pending AAA arbitration proceeding.”
Count VI, the abuse of process claim, is the subject of the special motion to dismiss. That count alleges that O’Marah has brought his claims in this action “ [notwithstanding his actual knowledge that Mr. Walkey and Mr. O’Marah have never entered into a binding settlement agreement,” knowing “that the allegations contained in his Complaint were false, frivolous and baseless,” and “for the ulterior improper purpose of, among other things, derailing the AAA arbitration procedure that he had expressly agreed to in the Operating Agreement.”
On October 3, 2007, O’Marah filed a motion to stay the arbitration. The Court heard that motion on October 19, 2007, along with a motion filed by Walkey for trustee process and equitable attachment. After review of all materials submitted by both sides, including affidavits and appended copies of the series of e-mail communications between the parties in connection with the settlement agreement, the Court found that O’Marah is likely to succeed in proving that the settlement agreement was final and binding.[1] On that basis, the Court allowed the motion to stay arbitration, and denied Walkey’s motion for pre-judgment security.
1. The Special Motion to Dismiss Under G.L.c. 231, §59H
This Court has recently considered the anti-SLAPP statute, and the case law under it, in Carl Zeiss Meditec, Inc., v. William Shields, Suffolk Superior Court Civil Action No. 07-2453BLS2 (October 2007) [23 Mass. L. Rptr. 268). No purpose would be served by repetition. At the first stage of the analysis, O’Marah must show that the abuse of process claim is based solely on petitioning activity, and has “no substantial basis other than or in addition to the petitioning activities.” Baker v. Parsons, 434 Mass. 543, 550 (2001); Duracraft Corp. v. Holmes Products Corp., 427 Mass. 156, 161 (1998). If conduct independent of the petitioning activity forms a substantial basis for the claim, the special motion to dismiss must be denied. See Garabedian v. Westland, 59 Mass.App.Ct. 427, 433 (2003); Ayasli v. Armstrong, 56 Mass.App.Ct. 740, 748 (2002).
Here, the counterclaim itself expressly identifies the filing of this action as the basis of the abuse of process claim, and identifies no other conduct as forming any part of the basis of that claim. As Walkey points out, the counterclaim as a whole alleges a myriad of other misconduct, and each count of the counterclaim incorporates those allegations. But none of the conduct alleged, other than the filing of this action, has any identified or apparent relationship to the abuse of process claim. Most significantly, the counterclaim does not allege any conduct subsequent to the issuance of process in this case “that amounted to an affirmative, subsequent misuse of the process” to further any ulterior purpose. Adams v. Whitman, 62 Mass.App.Ct. 850, 855 (2005). The Court therefore concludes that O’Marah has met his threshold burden of showing that the abuse of process counterclaim is based solely on the petitioning activity of bringing this action.[2]
The burden thus shifts to Walkey to show by a preponderance of the evidence both that the filing of *425 this suit was devoid of any reasonable factual support or arguable basis in law, and that it caused him actual injury. See G.L.c. 231, §59H; Duracraft, 427 Mass. at 167-68. Walkey cannot meet that burden, because this Court has already found that O’Marah has a likelihood of success on his claim for enforcement of the settlement agreement.
Walkey argues that this case is not of the sort that the anti-SLAPP law was intended to address. The Court does not disagree. As the Supreme Judicial Court has held, however, the statutory language, is broad, and courts are obliged to apply the statute as written. See Duracraft, 427 Mass. at 166-67. Although the statute appears to have been intended to protect petitioning activity on matters of public concern, its language is not so limited, and courts are not free to add a condition not expressed by the legislature. Id. Thus the statute has been applied to purely private disputes involving no issue of public concern. See Office One, Inc. v. Lopez, 437 Mass. 113, 122 (2002); Fabre v. Walton, 436 Mass. 517, 522-25 (2002); McLarnon v. Jokisch, 431 Mass. 343, 347 (2000). Nor does the statutory language limit its reach according to the resources of the parties on either side. See Office One, Inc. v. Lopez, 437 Mass. at 121-22; Baker v. Parsons, 434 Mass. at 548-49.
The anti-SLAPP statute requires dismissal of the abuse of process counterclaim, and entitles O’Marah to an award of his attorneys fees incurred in connection with that claim. Counsel may submit a petition for attorneys fees, limited to that claim, pursuant to Superior Court Rule 9A.
2. The Motion to Dismiss under Rule 12(b)(6)
As recited supra, counts I through IV of the counterclaim asserts various claims based on alleged misconduct of O’Marah in connection with the operating agreement. O’Marah contends that each of these counts must be dismissed, because on the facts alleged in the counterclaim, Walkey can prove no set of facts on which he would be entitled to relief on these claims. See Sullivan v. Chief Justice, 448 Mass. 15, 20 (2007); Spinner v. Nutt, 417 Mass. 549, 550 (1994); Nader v. Citron, 372 Mass. 96, 98(1977). The Court agrees.
Walkey’s counterclaim alleges that the settlement agreement was not binding or enforceable, but was only a draft reflecting incomplete negotiations. If that allegation is true, as the Court must assume it to be for purposes of this motion, then Walkey has not released his claims of misconduct by O’Marah, and will be free to pursue those claims. He will be required, however, to pursue them in the forum the parties agreed to in the operating agreement. As Walkey has expressly alleged, and as the operating agreement reflects, that forum is arbitration. Based on the allegations set forth in the counterclaim, no possible set of facts appears on which Walkey would be free to pursue those claims in this Court.
Walkey’s opposition to this motion with respect to these counts asserts two points. First, he notes that his demand for arbitration did not include claims based on one particular allegedly diverted corporate opportunity, known as Eastat Realty, because Walkey did not learn of that matter until after he had made the demand. The point appears to be correct, but it has no bearing on the issue presented here. The claim regarding Eastat is indisputably a claim arising out of the operating agreement, and therefore subject to its arbitration clause. If the settlement agreement is not enforceable, or if it is construed not to release the Eastat claim, then the operating agreement permits Walkey to pursue the claim only in arbitration. That it was not included in his previous demand does not foreclose a further demand. Walkey’s second argument is that the settlement agreement might ultimately be determined to be partially enforceable, such that it would release some of Walkey’s claims but not others. How that could be is unclear, but assuming it could, no theoiy appears under which any claims that would survive arising from the operating agreement would not be subject to its arbitration clause. The Court concludes that counts I through IV of the counterclaim must be dismissed.
Count V alleges that O’Marah fraudulently induced Walkey to enter into the settlement agreement by misrepresenting O’Marah’s financial resources, through a statement made by a lawyer for the company acting as intermediary. This count appears to be, in essence, a claim for rescission of the settlement agreement, assuming it to be otherwise enforceable. O’Marah argues that this count must be dismissed because the settlement agreement includes an exculpatory clause, disclaiming any representations not expressly set forth in the agreement. Walkey responds, as he does to all arguments based on the settlement agreement, that it was not complete because the referenced exhibits were never drafted or attached. This response misses the point, because analysis of this claim must be based on the assumption that the settlement agreement, as executed, was binding and enforceable — that is, that it was a complete contract, with the contents of the missing exhibits subject to being supplied by reference to objectively identifiable sources. Otherwise, there would be nothing to rescind.
Nevertheless, dismissal of this count is not available at this stage for a separate reason. Count IV, as pled, appears to allege intentional misrepresentation — that is, actual fraud. Massachusetts law does not enforce exculpatory clauses against claims of fraud. See Sound Techniques v. Hoffman, 50 Mass.App.Ct. 425, 429 (2000); Bates v. Southgate, 308 Mass. 170, 182 (1941). Starr v. Fordham, 420 Mass. 178, 188 (1995), on which the plaintiff relies, is not to the contrary. The Court there observed that a party claiming fraudulent inducement “may not raise as fraudulent any prior oral assertion inconsistent with *426 a contract provision that specifically addressed the particular point at issue.” Id., quoting Turner v. Johnson & Johnson, 809 F.2d 90, 97 (1st Cir. 1986). Nothing in the settlement agreement makes any representation regarding O’Marah’s financial resources, the specific point on which Walkey claims misrepresentation.
On the facts alleged, one could fairly question whether Walkey actually relied on the claimed misrepresentation, and if so, whether such reliance was reasonable under the circumstances, including that the alleged misrepresentation came to him through the lawyer-intermediary, who did not represent O’Marah personally, and including also O’Marah’s alleged histoiy of deceptive conduct. For purposes of this motion, however, the Court must assume Walkey’s allegations to be true, and must draw all reasonable inferences in Walkey’s favor. Accordingly, the motion to dismiss must be denied as to count V.
Count VII seeks declaratory judgment. This count is, as O’Marah points out, essentially the mirror-image of O’Marah’s claim for declaratory judgment, which claim would necessarily result in a declaration of the rights of the parties, whatever the Court might ultimately determine those rights to be. The claim is not therefore superfluous, however, because it provides for the Court an explicit statement of the declaration Walkey seeks if he ultimately prevails on the issue of enforceability of the settlement agreement. Accordingly, Count VII will stand.
CONCLUSION AND ORDER
For the reasons stated, Plaintiff and Counterclaim Defendant Eamon O’Marah’s Special Motion to Dismiss Count VI of the Counterclaim is ALLOWED. Counsel may submit a petition for attorneys fees, limited to that claim, pursuant to Superior Court Rule 9A. Plaintiff and Counterclaim Defendant Eamon O’Marah’s Motion to Dismiss Counterclaims is ALLOWED with respect to counts I through IV of the counterclaims, and DENIED as to counts v. and VII.

Although the issue was not, and still has not been addressed directly or fully briefed, the Court’s finding of likelihood of success on the merits necessarily included a preliminary determination that the dispute raised by the plaintiffs complaint in this case — that is, enforceability of the settlement agreement — does not fall within the scope of the arbitration provision of the operating agreement.

Walkey’s argument on this point rests largely on an unpublished decision of the Appeals Court. Such decisions have no precedential value, and are not properly cited. See Lyons v. Labor Relations Commission, 19 Mass.App.Ct. 562, 566 & n.7 (1985). The Court has nevertheless obtained and reviewed a copy of the decision cited, and finds it distinguishable on the facts as presented.