NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13011

IN THE MATTER OF WILLIAM CHARLES HAMM.


Middlesex.        January 8, 2021. - May 10, 2021.

Present:  Budd, C.J., Gaziano, Lowy, Cypher, Kafker, Wendlandt,
& Georges, JJ.


"Anti-SLAPP" Statute.  Conservator.  Practice, Civil, Motion to
     dismiss, Interlocutory appeal.  Probate Court, Accounts,
     Appeal.  Jurisdiction, Probate Court.


     Petition for appointment of guardian filed in the Middlesex
Division of the Probate and Family Court Department on July 21,
2000.

     A motion to dismiss or strike objections to a conservator's
final account, filed on March 25, 2019, was heard by William F.
McSweeney, III, J., and a special motion to dismiss was also
heard by him.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Breton Leone-Quick for the conservator.
     Charles M. Waters for the protected person.


     CYPHER, J.  We are asked to consider, in this appeal,

whether the "anti-SLAPP" statute, G. L. c. 231, § 59H, applies

to an objection to a conservator's final account, filed pursuant to G. L. c. 190B, §§ 1-401 (e) and 5-418 (e), in the Probate and Family Court (probate court).  The conservator, Candace Hamm, filed final accounts for each of the seventeen years for which she and her husband, William H. Hamm, were the conservators for their son William Charles Hamm (protected person).[1]  The protected person filed an objection to the final accountings and, subsequently, an amended objection.  In response to the amended objection, the conservator filed two motions to dismiss: a motion to dismiss or strike the protected person's amended objection to the accounting (motion to dismiss or strike) and a special motion to dismiss the protected person's amended objection pursuant to G. L. c. 231, § 59H (anti-SLAPP motion).  A judge in the probate court denied both motions.

The conservator appealed, and we allowed the protected person's application for direct appellate review.  Because we conclude that the anti-SLAPP statute does not apply in this circumstance, we affirm the judgment denying the special motion to dismiss (albeit on different grounds from the judge, who denied the motion on its merits).  Additionally, although the denial of the special motion to dismiss is immediately

---

[1] William H. Hamm was a co-conservator until his death in March 2018.  Candace Hamm is now acting both individually and in her capacity as her deceased husband's representative.

appealable pursuant to the doctrine of present execution, there is no basis for an immediate appeal from the denial of the motion to dismiss or strike, pursuant to the doctrine of present execution or otherwise, and we therefore dismiss so much of the appeal as seeks review of the denial of that motion.

Background.  Candace and William H. Hamm were appointed guardians for the protected person and conservators of his estate in 2000.  In 2014, the protected person filed a petition in the probate court to terminate both the guardianship and the conservatorship.  By agreement of the parties, the court terminated the guardianship.  Because all of the parties were then residing in Florida, they also agreed that jurisdiction over the conservatorship, including whether to terminate it, would be transferred to the appropriate court in Florida.  The protected person thereafter filed a suggestion of capacity in the Florida court.  The conservators agreed to a partial restoration of capacity but sought a continued limited guardianship of the property.  To that end, a judge granted in part and denied in part the protected person's motion, allowing the partial restoration of capacity and appointing a third party, Northern Trust Company, as limited guardian of the property.  The judge also clearly stated that the decision did not release the conservator from any accounting proceedings

related to the guardianship or conservatorship of the protected person's property.[2]

Meanwhile, while the proceedings in the Florida court were ongoing, the protected person filed a petition in the probate court in Massachusetts asking the court to order the conservator to render inventories and accounts for the years of conservatorship.[3]  The conservator eventually filed the required accounts for each year of the conservatorship, from 2000 to 2016, as well as a petition for an order of complete settlement, in March 2017, after the court ordered her to do so.[4]  The protected person objected to the conservator's inventory and accountings.

Additionally, separately, the parties were engaged in litigation in Minnesota, related to various aspects of the protected person's estate.  In November 2018, the parties reached a settlement agreement as to portions of that

---

[2] The value of the protected person's estate grew in value from approximately $8 million to approximately $44 million during the 2000 to 2016 period of conservatorship.

[3] Pursuant to G. L. c. 190B, § 5-418 (a), a "conservator shall account to the court for administration of the trust not less than annually . . . .  On termination of the protected person's minority or disability, a conservator shall account to the court."

[4] The conservatorship effectively ended in July 2016, when the Florida court appointed Northern Trust Company as the limited guardian of the protected person's estate.

litigation, but specifically carved out of the agreement certain classes of claims, or potential claims, related to certain identified family trusts.  Subsequent to that settlement, the protected person sought and received leave to file in the probate court an amended objection to the conservator's inventory and accountings, which he then filed in March 2019.[5]

In response to the amended objection, the conservator filed her two motions to dismiss:  the motion to dismiss or strike and the anti-SLAPP motion.  The judge in the probate court denied both motions, in separate decisions.  As to the anti-SLAPP motion, the judge noted that neither case law nor the anti-SLAPP statute itself addressed the question whether the statute applied to an objection to a conservator's account pursuant to G. L. c. 190B, §§ 1-401 (e) and 5-418 (e).  The judge did not reach the question, however, and instead concluded that even if the statute did apply, the special motion to dismiss should be denied on the merits.  The judge also denied the conservator's motion to dismiss or strike.  In that motion, the conservator had argued, among other things, that the protected person's amended objection amounted to a tort claim for money damages over which the probate court had no jurisdiction and that certain of the claims in the amended objection were barred by

_____

[5] The protected person amended his objection in light of the settlement in the Minnesota litigation.

the settlement agreement in the Minnesota litigation.  The judge rejected both arguments and declined to strike the relevant portions of the amended objection.

Following the denial of the two motions to dismiss, the conservator took several steps.  She filed a notice of appeal, in which she stated her intent to appeal from the denial of both motions.  She then filed a petition with a single justice of the Appeals Court pursuant to G. L. c. 231, § 118, first par., seeking leave to file an interlocutory appeal from the denial of the motion to dismiss or strike.  In her petition, she noted that she was appealing as a matter of right from the denial of the anti-SLAPP motion and that because the issues raised in that appeal overlapped with the issues in her appeal from the motion to dismiss or strike, allowing an interlocutory appeal from the latter would help avoid piecemeal appellate review.  The single justice concluded that the appeal from the denial of the anti-SLAPP motion was not a "compelling reason" to overcome the policy against premature appellate review, and therefore, the single justice denied the petition.

Following additional motion practice in both the probate court and the Appeals Court, a different single justice of the Appeals Court indicated that the conservator was free to renew her argument regarding the scope of appeal in her brief (i.e., that the conservator was free to argue in her brief that the

denial of the motion to dismiss or strike was immediately appealable), which the conservator has done. With all of that in mind, we turn to the issues before us regarding both the applicability of the anti-SLAPP statute and the scope of the appeal.[6]

Discussion. 1. Applicability of the ant-SLAPP statute. "The Legislature enacted the anti-SLAPP statute to counteract 'SLAPP' suits, defined broadly as 'lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'" Blanchard v. Steward Carney Hosp., Inc., 477 Mass. 141, 147 (2017), quoting Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 161 (1998) (Duracraft). To that end, the statute provides that "[i]n any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth, said party may bring a special motion to dismiss." G. L. c. 231, § 59H. The question we consider here is whether the protected person's objection to the conservator's accounting

---

[6] During the pendency of the trial court litigation, the court in Florida entered an order, in January 2019, terminating the limited guardianship and restoring full capacity to the protected person. For ease of reference, we follow the parties' lead and nonetheless refer to him as the protected person.

constitutes a "civil claim[], counterclaim[], or cross claim[]" to which the anti-SLAPP statute would apply.[7]  Id.

As we observed in Duracraft, 427 Mass. at 161, "[t]he typical mischief that the [anti-SLAPP] legislation intended to remedy  was lawsuits directed at individual citizens of modest means for speaking publicly against development projects."  To be sure, this is not the only type of case to which the anti-SLAPP legislation applies.  See, e.g., Blanchard, 477 Mass. at 151 (hospital president's statements to newspaper were petitioning activity encompassed by anti-SLAPP statute); Cardno ChemRisk, LLC v. Foytlin, 476 Mass. 479, 487 (2017) (anti-SLAPP statute protects those looking to advance causes in which they believe, such as environmental activists seeking protection of statute, not just those seeking to protect their own rights); Fabre v. Walton, 436 Mass. 517, 523 (2002), S.C., 441 Mass. 9 (2004) (filing of complaint for abuse protection order and submitting of supporting affidavits were petitioning activities within protection of anti-SLAPP statute).

---

[7] There is no question about the propriety of the conservator's interlocutory appeal from the denial of her anti-SLAPP motion.  See, e.g., Fabre v. Walton, 436 Mass. 517, 521-522 (2002), S.C., 441 Mass. 9 (2004) (pursuant to doctrine of present execution, "there is a right to interlocutory appellate review from the denial of a special motion to dismiss filed pursuant to the anti-SLAPP statute").

Indeed, and again as we noted in Duracraft, 427 Mass. at 162, "[t]he legislative history in Massachusetts demonstrates that in response to the problem of SLAPP suits the Legislature intended to enact very broad protection for petitioning activities."  That said, we also noted that we were "dubious that the Legislature intended to create an absolute privilege," and we therefore considered how best to interpret the statute to "effect legislative intent that the statute be applied only to SLAPPs and not to suits arising in wholly different circumstances."  Id. at 162-163 & n.11.

The circumstances presented here are just the type of "wholly different circumstances" to which the anti-SLAPP statute was not meant to, and does not, apply.  Simply put, an objection to an accounting filed pursuant to G. L. c. 190B, §§ 1-401 (e) and 5-418 (e), does not constitute a "civil claim[], counterclaim[], or cross claim[]" for purposes of G. L. c. 231, § 59H.  Pursuant to G. L. c. 190B, § 5-418 (a), a conservator appointed by the court to manage the estate of a protected person "shall account to the court for administration of the trust not less than annually unless the court directs otherwise."  Additionally, pursuant to § 5-418 (c), the account must contain certain information, including a listing of the balance of the prior account or inventory; a listing of the services provided to the protected person; and any

recommendations for changes in the conservatorship plan. The statute also provides, in § 5-418 (e), for objections to a conservator's account. Any such objections are to be filed pursuant to G. L. c. 190B, § 1-401 (e), which provides, in relevant part, that an objecting party "shall file a written affidavit of objections to the proceeding, stating the specific facts and grounds upon which the objection is based." We do not view this procedure as akin to a claim, counterclaim, or cross claim as specified in G. L. c. 231, § 59H.

The conservator argues that an affidavit of objection is simply a specialized form of pleading containing civil claims. Relying on this court's decision in O'Rourke v. Hunter, 446 Mass. 814 (2006), she argues that such affidavits are "routinely treated" as pleadings in the probate court. In that case, we considered certain procedures relevant to a will contest and, among other things, noted that "[a] motion to strike an affidavit of objections is similar in some ways to a motion to dismiss a complaint in a civil action under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974)." Id. at 817-818, and cases cited.[8] The implication then, is that, if a motion to strike an

---

[8] More specifically, in O'Rourke v. Hunter, 446 Mass. 814, 816 (2006), the court was considering rule 16 of the Rules of the Probate Court (1987). After the court's decision in that case, the rules were amended; the relevant standards for objections in will contests, as in cases involving conservators, are now found in G. L. c. 190B, § 1-401.

affidavit or objection "is similar in some ways" to a motion to dismiss a complaint, then an affidavit of objection is "similar in some ways" to a civil complaint. Even if that is so, O'Rourke did not involve the anti-SLAPP statute, and we do not take the implications of that case to mean that, in every context, an affidavit of objection must be treated just like a civil complaint.

Rather, as the protected person suggests, there is a "fundamental difference" between an accounting of the type at issue here and the types of lawsuits that were the basis for anti-SLAPP legislation. This is not simply a dispute between two parties; it involves a fiduciary relationship -- between the conservator and the protected person -- and involves the conservator's duty to account for the protected person's estate. It is incumbent on the conservator to provide an accounting; she is required to do so by statute, and the protected person has, by statute, the right to file an affidavit of objection to the accounting. This simply does not fall within the confines that the Legislature had in mind in enacting the anti-SLAPP statute.[9]

---

[9] In addition to arguing that the anti-SLAPP statute does not apply in the context of this case, the protected person also argues that the conservator is actually using the anti-SLAPP statute as a litigation strategy -- that is, the "special motion may have been deployed not to limit 'strategic litigation,' but as an additional litigation tactic." Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 163 (1998). Given our conclusion

Indeed, we know of no cases in any jurisdiction in which anti-SLAPP laws have been used in the way that the conservator seeks to use the law here.  We conclude that the anti-SLAPP statute does not apply in the circumstances of this case, involving an accounting and objections thereto.[10]

2.  Scope of the interlocutory appeal from the motion to dismiss or strike.  We next address the conservator's purported appeal from the denial of her motion to dismiss or strike, as to which she raises two issues:  (1) that the judge in the probate court erred in exercising subject matter jurisdiction over certain of the protected person's claims in his amended objection; and (2) that the judge erred in failing to afford "full faith and credit" to the final judgment in the Minnesota litigation.  She posits a separate basis for the propriety of the interlocutory appeal for each of the two issues, which we consider in turn.

As the conservator correctly notes, the issue of subject matter jurisdiction may be raised at any time, by a party or by the court.  See, e.g., Maxwell v. AIG Domestic Claims, Inc., 460

---

that the anti-SLAPP statute does not apply here, we need not consider this point.

[10] We do not address whether the anti-SLAPP statute applies to other probate court proceedings, or to other proceedings involving conservators, guardians, or other similarly situated individuals.

Mass. 91, 99-100 (2011), and cases cited. This does not mean, however, that a ruling on that issue is necessarily a proper subject for interlocutory appeal. As we stated in Maxwell, which involved the issue of subject matter jurisdiction in the context of an interlocutory appeal from the denial of a motion for summary judgment, "the ruling regarding subject matter jurisdiction is . . . not properly the subject of interlocutory appeal." Id. at 99.

In Maxwell, we went on to consider the jurisdictional issue, but only after concluding that doing so was "the lesser evil," in the context of that case, between the "undesirable options of wasting judicial resources through duplicative, piecemeal appellate litigation and permitting [the defendant] to circumvent a bedrock principle of appellate procedure." Id. at 99.[11] This case does not present the same type of circumstances, and even if it did, this would not necessarily mean that we are bound to consider the interlocutory appeal or, more importantly, that the conservator has any right to an interlocutory appeal.

"As a general rule, there is no right to appeal from an interlocutory order unless a statute or rule authorizes it."

---

[11] Among other reasons for considering the subject matter jurisdiction issue in the interlocutory appeal, we noted that the issue made up the majority of the parties' briefs, the plaintiff did not object to consideration of the issue, and the issue also had been addressed in amicus briefs. Maxwell v. AIG Domestic Claims, Inc., 460 Mass. 91, 98-99 (2011).

Maddocks v. Ricker, 403 Mass. 592, 597-598 (1988), and cases cited. See Brum v. Dartmouth, 428 Mass. 684, 687 (1999) (interlocutory rulings, such as denial of motion to dismiss, are not final orders and thus generally not appealable until ultimate disposition of case).[12]

The conservator fares no better with her argument that the issue whether the judge in the probate court failed to afford "full faith and credit" to a final judgment in the Minnesota litigation is the proper subject of an interlocutory appeal pursuant to the doctrine of present execution. That doctrine applies to cases "where the interlocutory ruling will interfere with rights in a way that cannot be remedied on appeal from the final judgment," and "where the matter is collateral to the merits of the controversy" (quotations and citations omitted). Marcus v. Newton, 462 Mass. 148, 152 (2012). Even if the judge's ruling on the full faith and credit issue is collateral to the merits of the parties' dispute, the ruling does not interfere with the conservator's rights in a way that cannot be remedied in an appeal from a final judgment.

The conservator argues that she should not be required to defend against claims that were a part of and were disposed of in the Minnesota litigation and, further, that this is an issue

---

[12] Any exceptions to the rule do not appear to apply to the conservator's appeal.

of full faith and credit -- that the full faith and credit clause bars duplicative litigation.  In reality, what the conservator is arguing is that claims raised and resolved in the Minnesota litigation are subject to the parameters of res judicata; that is, that the protected person is precluded from relitigating them.  See Wright Mach. Corp. v. Seaman-Andwall Corp., 364 Mass. 683, 688-689 (1974) ("[T]he principle of res judicata requires that a valid and final personal judgment rendered by a court of competent jurisdiction over the parties and the subject matter serve as a bar to any further proceedings between the same parties on the same claim. . . .  The effects of the res judicata doctrine extend to judgments rendered in other States through the full faith and credit clause of the Constitution . . .").

Res judicata claims, however, are not subject to the doctrine of present execution.  See Mooney v. Warren, 87 Mass. App. Ct. 137, 138 (2015).  In Mooney, the Appeals Court rejected the defendant's argument that a motion to dismiss on res judicata grounds was akin to a motion to dismiss on the basis of immunity from suit.  See id. at 138-139.  Unlike interlocutory orders involving claims of immunity from suit, which are immediately appealable because the right to immunity from suit is lost forever if the order is not appealed until the close of litigation, a defense based on res judicata is about "freedom

from liability," not "freedom from suit." <u>Id</u>. at 139, quoting <u>Marcus</u>, 462 Mass. at 152. As with the conservator's subject matter jurisdiction claim, her full faith and credit claim is one that can be readily addressed, and remedied if need be, in an appeal from a final judgment.

<u>Conclusion</u>. The judgment denying the anti-SLAPP special motion to dismiss is affirmed. So much of the appeal as seeks review of the denial of the motion to dismiss or strike is dismissed.

<u>So ordered</u>.