STATE OF VERMONT

SUPERIOR COURT                                    CIVIL DIVISION
Franklin Unit                                     Docket No. 21-CV-00594

KRISTINA J. POLAK
and
STEPHEN M. POLAK,                                 Vermont Superior Court
        Plaintiffs
                                                  AUG 1 7 2021

        v.                                        FILED: Franklin Civil

FELIPE RAMIREZ-DIAZ
and
YESICA SANCHEZ DE RAMIREZ,
        Defendants.

## DECISION ON DEFENDANTS' SPECIAL MOTION TO STRIKE

This matter is before the Court on the Special Motion to Strike filed by Defendants Felipe Ramirez-Diaz and Yesica Sanchez de Ramirez pursuant to 12 V.S.A. § 1041. Plaintiffs Kristina Polak and Stephen Polak initially filed a Complaint against Defendants alleging one count of defamation against Ms. Sanchez, and one count of defamation, one count of intentional infliction of emotional distress, and one count of malicious prosecution against both Defendants. A hearing was held on the special motion to strike on June 16, 2021. At that time, the Court also granted Plaintiffs' Motion to Amend as unopposed. Plaintiffs are represented by Attorney Robert Kaplan. Defendants are *pro se*, but Attorney Erika Johnson entered a limited appearance on their behalf for the sole purpose of filing, and attending any hearing related to, the Special Motion to Strike.

### Background

The origins of this complaint appear to be rooted in a property dispute between neighbors that has since escalated out of control. In the interest of brevity, the Court will not detail the intricacies of this dispute but will instead focus on the conduct directly underlying the Amended Complaint. Plaintiffs allege that since the relationship between the parties deteriorated, the Defendants have made false allegations against them to government authorities. The first instance of these alleged false allegations occurred in 2018, when Ms. Sanchez reported to Saint Albans police that Mr. Polak had assaulted her by pushing her to the ground while holding her young child. After the alleged assault, Ms. Sanchez was seen at Northwestern Medical Center, where it was documented that she had mild redness on her thigh, apparently from falling. Ms. Sanchez's report to police did not result in any criminal charges against Mr. Polak.

The next complained-of incident also occurred in 2018. At that time, Plaintiff Ms. Polak allegedly threatened Defendants with a gun, which Defendants again reported to Saint Albans police. Although again no criminal charges were filed, the matter was referred to the Franklin County State's Attorney, who filed with the Court a Petition for Extreme Risk Protection Order ("ERPO") against Ms. Polak. A Temporary ERPO was granted and resulted in law enforcement

seizing Ms. Polak's firearms. After two hearings, however, the Court denied the ERPO, citing an insufficient amount of credible evidence that the weapon was actually pointed at Defendants.

Around the same time, Defendants also filed a Complaint for Order Against Stalking ("Stalking Order") against Plaintiffs based in part on the above incidents. Temporary Stalking Orders were granted as to both Plaintiffs, but were later vacated, and permanent orders were denied. Defendants described both incidents in both the supporting affidavits filed with the Complaint and their testimony at the Stalking Order hearings. Again, the Court found that there was insufficient credible evidence presented to meet the heightened standard required to grant a Permanent Stalking Order.

Finally, Plaintiffs additionally allege that Defendants repeated the above accusations – that Mr. Polak pushed Ms. Sanchez and that Ms. Polak threatened the Defendants with a gun – to neighbors and members of the community. They also allege that Defendants have accused them of being racist,[1] and have also repeated these accusations to neighbors and members of the community. Although there are substantial pleadings related to the actual incidents, the ERPO proceedings, and the Stalking Order Proceedings, there are few specific details related to the statements allegedly made to neighbors and community members, so it is unclear when these statements were made, what was said, and to whom specifically the statements were made.

## Discussion

12 V.S.A. § 1041 is Vermont's equivalent to an anti-strategic lawsuit against public participation ("anti-SLAPP") statute. When enacting the anti-SLAPP statute, the Vermont Legislature intended to protect citizens from facing retaliatory litigation after exercising their rights to free speech and to petition the government concerning public interest matters. *Felis v. Downs Rachlin Martin PLLC*, 2015 VT 129, ¶ 48, 200 Vt. 465. It allows a defendant to file a special motion to strike "in an action arising from the defendant's exercise, in connection with a public issue, of the right to freedom of speech or to petition the government for redress of grievances under the U.S. or Vermont Constitution." 12 V.S.A. § 1041(a). The Court is required to grant a special motion to strike unless the plaintiff can demonstrate that (1) "the defendant's exercise of his or her right to freedom of speech and to petition was devoid of any reasonable factual support and any arguable basis in law" and (2) "the defendant's acts caused actual injury to the plaintiff." 12 V.S.A. § 1041(e)(1). The Court "shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based" when making its determination. 12 V.S.A. § 1041(e)(2).

Vermont Superior Court

AUG 17 2021

FILED: Franklin Civil

I.    Protected or Unprotected Activity

---

[1] It is unclear from the Amended Complaint who this accusation was made to. Although Plaintiffs are adamant that it is not part of their Complaint, it should be noted that Defendants filed a complaint with the Vermont Human Rights Commission ("HRC") alleging that Plaintiffs "engaged in a pattern of discriminatory behavior" towards Defendants and their family "on the basis of [their] national origin, race, and skin color." Defs.' Ex. X at 1. After an extensive investigation, the HRC concluded that there were reasonable grounds to believe that Plaintiffs "illegally discriminated against [Defendants] on the basis of their race, color, and national origin, in violation of Vermont's Fair Housing and Public Accommodations Act." Defs.' Ex. Z at 36.

The first step in analyzing an anti-SLAPP motion to strike is to determine whether the action is based on the defendant's exercise of their rights to free speech or to petition the government in connection with a public issue. According to the Legislature, this includes

(1) any written or oral statement made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;

(2) any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;

(3) any written or oral statement concerning an issue of public interest made in a public forum or a place open to the public; or

(4) any other statement or conduct concerning a public issue or an issue of public interest which furthers the exercise of the constitutional rights of freedom of speech or the constitutional right to petition the government for redress of grievances.

12 V.S.A. § 1041(i). The use of the word "includes" preceding the list in this subsection indicates that this is not exhaustive.

The conduct that forms the basis of Plaintiffs' Amended Complaint can be divided into three general categories: (1) statements that Defendants made to police; (2) complaints and statements Defendants made to the Court; and (3) statements that Defendants made to Plaintiffs' neighbors and fellow community members. Because it's possible that the complaint is based on both protected and unprotected conduct, we must first address what impact, if any, the inclusion of unprotected conduct in the complaint has on the Motion to Strike.

The Vermont Supreme Court has not had the opportunity to address whether a cause of action containing allegations of both protected and unprotected conduct would be subject to a special motion to strike. Courts in California, which has an anti-SLAPP statute similar to 12 V.S.A. § 1041, see Cal. Civ. Proc. Code § 425.16, have had the opportunity to address this, however. "A mixed cause of action is subject to [the anti-SLAPP statute] if at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity." *Salma v. Capon*, 161 Cal.App.4th. 1275, 1287–88 (Cal. Ct. App. 1st Dist. 2008); see also *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal.App.4th 294, 308 (Cal. Ct. App. 2nd Dist. 2001) ("[A] plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'") Massachusetts courts have reached a similar conclusion. See *Duracraft Corp. v. Holmes Prod. Corp.*, 691 N.E.2d 935, 943 (1998), holding modified by *Blanchard v. Steward Carney Hosp., Inc.*, 75 N.E.3d 21 (2017) ("Because the Legislature intended to immunize parties from claims 'based on' their petitioning activities, we adopt a construction of 'based on' that would exclude motions brought against meritorious claims with a substantial basis other than or in addition to the petitioning activities implicated"). This is also supported by the common law. See 123 Am. Jur. Proof of Facts 3d 341 (2021) ("When a pleading contains allegations referring to both protected and nonprotected activity, it is the principal thrust or gravamen of the plaintiff's cause of action that determines whether a special motion to strike a complaint under the anti-SLAPP statute applies."). Based on this, even

if Plaintiffs' Amended Complaint includes allegations of both protected and unprotected conduct, Defendants' Motion to Strike may still be granted if it is determined that the complaint is primarily based on the protected conduct.

a)    Statements Made to Police

Plaintiffs first complain of reports that Defendants made to law enforcement about the incident in which Mr. Polak allegedly pushed Ms. Sanchez to the ground and the incident in which Ms. Polak allegedly threatened Defendants with a gun. Defendants' reports to police are clearly within the scope of conduct protected by 12 V.S.A. § 1041. As discussed above, the Legislature has stated that, in the context of 12 V.S.A. § 1041, "the exercise, in connection with a public issue, of the right to freedom of speech or to petition the government for redress" includes "any written or oral statement made before a...judicial proceeding, or any other official proceeding authorized by law." 12 V.S.A. § 1041(i) (emphasis added). Although the Vermont Supreme Court has not yet addressed whether this encompasses police reports, the courts of other states have. See *Chabak v. Monroy*, 154 Cal.App.4th 1502, 1511–12 (Cal. Ct. App. 5th Dist. 2007) (holding that defendant's reports to police alleging that plaintiff touched her inappropriately "arose from her right to petition the government and thus is protected activity" under anti-SLAPP statute); see also *Keegan v. Pellerin*, 920 N.E.2d 888, 891 (Mass. App. Ct. 2010) ("[R]eporting suspected criminal activity to the police and filing criminal complaints are activities the anti-SLAPP statute firmly protects."). Defendants' reports to police regarding Mr. Polak's alleged assault of Ms. Sanchez and Ms. Polak's alleged threat to the Defendants and their children were the first step in exercising their rights to petition the government and are thus conduct protected by 12 V.S.A. § 1041.

b)    Complaints and Statements Made to the Court

Plaintiffs' complaint is also partially based on Defendants' complaints and statements made to the Court. This includes: (1) Defendants' testimony during the proceedings related to the ERPO; and (2) Defendants' filing of the Complaint for Order Against Stalking ("Stalking Complaint") and the related affidavits and testimony. Again, the Legislature has included "any written or oral statement made before a...judicial proceeding" as conduct protected by the anti-SLAPP statute. Other courts have interpreted similar definitions to be broad enough to encompass the filing of requests for abuse prevention orders. See *McLarnon v. Jokisch*, 727 N.E.2d 813, 817 (Mass. 2000) (holding that the phrase "any written or oral statement made before or submitted to a...judicial body" "is broad enough to include filing for abuse protection orders and supporting affidavits."). The Defendants' testimony during the ERPO proceedings and Stalking Complaint proceedings were oral statements made before a judicial proceeding, and Defendants' filing of the Stalking Complaint falls within the definition of a written statement made before a judicial proceeding. This conduct is all clearly protected by the anti-SLAPP statute.

Vermont Superior Court

AUG 1 7 2021

FILED: Franklin Civil

c)    Statements Made to Neighbors and Community Members

Finally, Plaintiffs complain that Defendants repeated the alleged false accusations of the above incidents to neighbors and community members. Defendants also allegedly accused Plaintiffs of being racist and discriminating against them on the basis of their race and national origin, and allegedly repeated those accusations to neighbors and community members. As compared to the facts alleged above, these allegations are relatively vague.[2]

We first address the alleged statements to neighbors and community members about Defendants' alleged false allegations against Plaintiffs. When enacting 12 V.S.A. § 1041, the Legislature seems to have included a "catch-all" category of what could be considered protected activity: "any other statement or conduct concerning a public issue or an issue of public interest which furthers the exercise of the constitutional rights of freedom of speech or the constitutional right to petition the government for redress of grievances." 12 V.S.A. § 1041(i)(4). The question, then, first turns on whether these alleged false allegations concern a public issue or an issue of public interest. "A statement may concern 'an issue of public interest' even if it is of interest to only a limited portion of the public, such as members of a particular community or private organization." *Ernst v. Kaufmann*, 50 F.Supp.3d 553, 560 (D. Vt. 2014) (citing *Damon v. Ocean Hills Journalism Club*, 85 Cal.App.4th 468, 102 Cal.Rptr.2d 205, 212–13 (Cal. Ct. App. 4th Dist. 2000)). "However, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest." *Id.* at 561 (quoting *Weinberg v. Feisel*, 110 Cal.App.4th 1122, 2 Cal.Rptr.3d 385, 392 (Cal. Ct. App. 3rd Dist. 2003)) (internal quotation marks omitted). The Vermont Supreme Court has previously held that "matters connected to law enforcement investigation, public safety, and crime in the community are of public concern." *Cornelius v. The Chronicle, Inc.*, 2019 VT 4, ¶ 10, 209 Vt. 405. "As this Court has recognized in other contexts, under the First Amendment the public and the media have a constitutional right of access to information relating to the activities of law enforcement officers and to information concerning crime in the community." *Id.* (quoting *Caledonian Record Publ'g Co. v. Walton*, 154 Vt. 15, 21 (1990)) (internal quotation marks omitted).

In this case, the Court concludes that the alleged statements Defendants made to neighbors and community members about the allegedly false allegations accusing Mr. Polak of

---

[2] Of the 41 paragraphs of alleged facts contained in the Amended Complaint, only three at most pertain to these allegations:

39. After losing court cases against Plaintiffs, Defendants began a new course of harassment against Plaintiffs by accusing Plaintiffs of being racists, acting against Defendants in a racially discriminatory manner, and of making racist and discriminatory comments to and about Defendants concerning their Mexican origin and immigration status.

40. Defendants repeated their above false claims, including that Plaintiffs threatened Defendants with harm, Plaintiffs made discriminatory and racist comments to and about Defendants, that Mr. Polak pushed Ms. Sanchez and that Mrs. Polak pointed her gun at Defendants, to several of the Polaks neighbors and to members of Plaintiffs community.

41. Plaintiffs have been forced to defend themselves to their neighbors and members of their community and to spend tens of thousand of dollars in legal fees defending themselves against Defendants' barrage of false accusations.

Amended Complaint, ¶¶ 39–41.

Vermont Superior Court

AUG 1 7 2021

FILED: Franklin Civil

pushing Ms. Sanchez and Ms. Polak of threatening the Defendants with a gun are in fact protected by the anti-SLAPP statute. Here, the alleged statements concerned both public safety and possible criminal activity occurring within the neighborhood. The incidents that produced the allegations arose out of an escalating neighborhood conflict between the parties that has now begun to involve neighbors and other community members. See generally Defs.' Ex. Z (demonstrating that neighbors and members of the parties' community have been interviewed regarding the dispute between the parties). And, as stated above, these members of the public have a First Amendment right of access to information concerning crime within the community. Based on these factors, it is reasonable to conclude that Defendants' statements concerned a public issue which furthers the exercise of the constitutional rights of freedom of speech because, although they were made to only a small subset of the public (neighbors and members of the community), the statements related to public safety concerns and possible criminal activity arising from a dispute that has grown to involve neighbors and members of said community. They are thus conduct protected by 12 V.S.A. § 1041.

It should be noted that, even if these statements are not protected by 12 V.S.A. § 1041, the Court is not convinced that they are anything more than merely incidental to the allegations that have been determined to be protected conduct. The original Complaint did not contain any allegations that Defendants had repeated their allegedly false claims to neighbors or members of the community. Rather, the Complaint was premised almost entirely on the Defendants' allegedly false reports to law enforcement and the subsequent ERPO and Stalking Order proceedings. Additionally, the Amended Complaint only contains one conclusory paragraph regarding the alleged statements made to neighbors. As stated previously, "a plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'" *Fox Searchlight Pictures, Inc.*, 89 Cal.App.4th at 308. Here, it appears to the Court that Plaintiffs, by inserting the solitary claim of the alleged statements made to neighbors and community members, are using this exact tactic in order to frustrate the application of the anti-SLAPP statute. Based on the conclusory nature of the pleading, the Court cannot conclude that the complained-of conduct is anything more than incidental to the true gravamen of the Amended Complaint, which is the alleged false accusations made to law enforcement and subsequent related court proceedings.

The same cannot be said, however, of Plaintiffs claims that Defendants have falsely accused them of being racist to neighbors and members of the community. Although made to the same group of the "public," the Court could find no case law that would suggest that accusations of racism or racist conduct meet the "public issue" requirement of the anti-SLAPP statute. And unlike the statements related to the incidents underlying Defendants' reports to law enforcement and the subsequent court proceedings, based on the pleadings in both the Complaint and the Amended Complaint,[3] these alleged accusations of racism have a basis separate from Defendants' protected petitioning activity. Because of these factors, Defendants' alleged

---

[3] Nowhere in the Complaint or Amended Complaint do Plaintiffs include allegations related to Defendants' complaint to the Vermont HRC. Although such activity would likely be protected by the anti-SLAPP statute, the Court must draw all reasonable inferences in Plaintiffs' favor. *Jang v. Trs. of St. Johnsbury Acad,* 331 F. Supp. 3d 312, 334 (D. Vt. 2018)

Vermont Superior Court

AUG 17 2021

FILED: Franklin Civil

accusations of racism and the related statements to neighbors and community members are not protected by the anti-SLAPP statute.

## II. Burden Shifting Analysis

The second step in analyzing an anti-SLAPP Motion to Strike is to examine whether the Plaintiffs have demonstrated that the protected conduct was "devoid of *any* reasonable factual support and any arguable basis in law." 12 V.S.A. § 1041(e)(1) (emphasis added). In this case, the Plaintiffs have failed to meet that burden.

First, Plaintiffs have failed to demonstrate that Defendants' reports to law enforcement and the subsequent filing of the Complaint for the Stalking Order against Mr. Polak were devoid of any factual support or arguable basis in law. As to the incident itself, a witness testified to seeing at least a verbal altercation between Mr. Polak and Ms. Sanchez, Defs.' Ex. EE at 116–17, and medical records show that Ms. Sanchez was examined after the incident and was reported to have mild redness on the back of her thigh, Defs.' Ex. C at 4. A reasonable person could conclude that there was at least some factual support for Ms. Sanchez reporting the incident to law enforcement and testifying about the incident during the Stalking Order hearings. A reasonable person could also conclude that there was some factual support for filing the Stalking Order Complaint. As defined by the relevant statute, stalking includes engaging in conduct that the person "knows or should know would cause a reasonable person to…fear for his or her safety or the safety of a family member; or…suffer substantial emotional distress as evidenced by…a fear of…bodily injury." 12 V.S.A. § 5131(6). It is easy to conclude that a physical assault perpetrated by a neighbor would cause a reasonable person to fear for their safety, especially if said assault occurred in the midst of an ongoing dispute with said neighbor. Thus, the factual support for reporting the alleged assault also serves as factual support for the filing of the Stalking Order Complaint. Based on this, Plaintiffs have not me their burden as to the claims based on the alleged false accusations related to the alleged assault and the Stalking Order against Mr. Polak.

Plaintiffs have similarly failed to demonstrate that Defendants' reports to law enforcement regarding the alleged threat by Ms. Polak, their testimonies regarding the incident at the ERPO proceedings, and the subsequent filing of the Complaint for the Stalking Order against Ms. Polak were devoid of any factual support or arguable basis in law. While the parties dispute whether Ms. Polak actually pointed the gun at the Defendants, Ms. Polak herself testified during the ERPO hearing that, during the incident, she went into her home, put her weapon into its holster on her hip, went back outside, and indicated to Defendants that she had her firearm on her. Defs.' Ex. CC at 60:7–15. Given the ongoing, escalating dispute between the neighbors, it would not be unreasonable to conclude from this that Ms. Polak threatened Defendants with the weapon. Ms. Polak's own testimony provides some factual basis for Defendants' report to police about the incident, as well as their testimony at the ERPO and Stalking Order hearings. As above, it also supports Defendants' filing of the Stalking Order Complaint against Ms. Polak. Being threatened with a gun by a neighbor could cause a reasonable person to fear for their safety, especially where there is an ongoing dispute with said neighbor. Because there is some factual support and arguable basis in law for the police report, testimony, and Stalking Order

Vermont Superior Court

AUG 1 7 2021

FILED: Franklin Civil

Complaint related to the incident in which Ms. Polak allegedly threatened Defendants with a gun, Plaintiffs have failed to meet their burden as to these claims.

Plaintiffs would like the Court to interpret the prior denials of the Permanent ERPO and Permanent Stalking Orders as proof that there is no factual basis for the Defendants' filing of said complaints and corresponding reports to law enforcement. The Court disagrees with this view, however. In denying the ERPO, the Court indicated that the evidence presented during the hearings did not meet the heightened standard of clear and convincing evidence required for an ERPO – not that there was *no* evidence the incident occurred. See Defs.' Ex. CC at 66:15–21, 68:5–9. The same can be said of the Stalking Orders. In those proceedings, the Court even indicated that there was "some credibility and some truth to the petition." Defs.' Ex. DD at 214:1–2. Again, nowhere in these proceedings does the Court indicate that there was *no* factual basis for the filing of the Stalking Order Complaints.

Plaintiffs also take issue with the alleged inconsistencies among Defendants' reports to law enforcement and subsequent affidavits and testimonies. Just because Defendants may have made inconsistent statements about the incidents, however, does not lead to the automatic conclusion that the incidents did not occur or that Defendants made false accusations regarding the incidents. See *State v. Reed*, 2017 VT 28, ¶ 15, 204 Vt. 399 ("It is entirely possible that two statements made by the same person can be inconsistent without either being knowingly false.").

Based on the above, Plaintiffs have not met their burden in demonstrating that the complained-of conduct that is protected by the anti-SLAPP statute was devoid of any factual support or arguable basis in law. As a result, any causes of action primarily based on the protected conduct must be stricken pursuant to 12 V.S.A. § 1041.

a. Count I – Defamation Against Ms. Sanchez

Plaintiffs' Count I is based on (1) Ms. Sanchez's allegedly false report to law enforcement that Mr. Polak pushed her to the ground; and (2) Ms. Sanchez allegedly repeating the accusation to neighbors and community members. The gravamen of the cause of action, however, is the alleged false report to law enforcement. This is based on the fact that Plaintiffs' Amended Complaint includes extensive pleadings related to the alleged assault and the resulting report to law enforcement, yet it only contains one vague, conclusory allegation that Defendants repeated the false accusation to neighbors and community members. Because Count I is primarily based on conduct that is protected by the anti-SLAPP statute, and because Plaintiffs have failed to meet their burden in demonstrating that the conduct was devoid of any factual support or arguable basis in law, it must be stricken from the Amended Complaint in its entirety.

b. Count II – Defamation Against Ms. Sanchez and Mr. Ramirez

Plaintiffs' Count II is based on (1) Defendants' allegedly false accusations regarding the incident in which Ms. Polak allegedly threatened them with a gun; (2) Defendants' repeating of these allegations to neighbors; (3) Defendants' allegedly false accusations that Plaintiffs acted towards them in a racially discriminatory manner; and (4) Defendants' repeating of these allegations to neighbors. This cause of action appears to boil down to two main bases: the

Franklin Superior Court

AUG 1 7 2021

FILED: Franklin Civil

allegedly false accusations regarding the incident with Ms. Polak, which is conduct protected by the anti-SLAPP statute, and the allegedly false accusations of racism, which is not conduct protected by the anti-SLAPP statute. Because of this, Count II is stricken only to the extent that any claims related to the above-described protected conduct is stricken from the cause of action. The only claim in Count II to survive this Motion, therefore, is the claim that Defendants allegedly made false allegations that Plaintiffs are racists and treated Defendants in a racially discriminatory manner.

    c. Count III – Intentional Infliction of Emotional Distress Against Ms. Sanchez and Mr. Ramirez

Plaintiffs' Count III is based on the alleged "course of harassment" Defendants have engaged in against Plaintiffs, including (1) the alleged false statements to third parties regarding Mr. Polak's alleged assault of Ms. Sanchez, Ms. Polak's threatening Defendants with a gun, and Plaintiffs' alleged racism towards Defendants; (2) Defendants' allegedly false reports to law enforcement about both incidents; and (3) Defendants' participation in the alleged meritless ERPO and Stalking Order proceedings. The majority of this alleged "course of harassment," and thus the gravamen of this count, stems from conduct that is protected by the anti-SLAPP statute – i.e., Defendants' reports to law enforcement the resulting court proceedings, as well as the related statements made to third parties. Because of this, Count III must be stricken in its entirety.

    d. Count IV – Malicious Prosecution Against Ms. Sanchez and Mr. Ramirez

Plaintiffs' Count IV is entirely based on Defendants' participation in the filing of the ERPO against Ms. Polak and the filing of the Complaint for Stalking Orders against both Plaintiffs. This has all been established to be conduct protected by the anti-SLAPP statute, and Plaintiffs failed to demonstrate that the conduct was devoid of factual support or arguable basis in law. Accordingly, Count IV must be stricken from the Amended Complaint in its entirety.

## Order

Defendants' Special Motion to Strike is GRANTED in part and DENIED in part, as follows: Counts I, III, and IV of the Amended Complaint are dismissed. Count II may stand, but only insofar as any claims based on conduct that is protected by 12 V.S.A. § 1041 must be stricken from the Count. The only claim to survive this Motion, therefore, is the Count II defamation claim that Defendants allegedly made false allegations that Plaintiffs are racists and treated Defendants in a racially discriminatory manner.

SO ORDERED at Saint Albans, Vermont this 17th day of August, 2021.

Vermont Superior Court

AUG 1 7 2021

FILED: Franklin Civil

_Robert A. Mello_
Robert A. Mello
Superior Judge