NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-511

D.D.S. INDUSTRIES, INC.

vs.

LEFTFIELD LLC.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This dispute arose from a project to renovate and construct a high school in the city of Fall River (city).  A subcontractor on the project, D.D.S. Industries, Inc. (D.D.S.), brought a claim for defamation against the project manager, Leftfield LLC (Leftfield), alleging that Leftfield published false statements about D.D.S. in a letter to the city's mayor.  On Leftfield's motion a Superior Court judge dismissed the claim under G. L. c. 231, § 59H (commonly known as the anti-SLAPP statute), and D.D.S. appeals.  We affirm.

Background.  D.D.S. was one of several contractors that responded to a request for qualification (RFQ) for heating, ventilation, and air conditioning work on the project.  The RFQ

was issued in accordance with G. L. c. 149A, § 8, which establishes a detailed process for selecting trade contractors to perform "sub-bid classes of work" on certain public building projects. In brief, the process has two phases: the first consists of scoring the responses to the RFQ and creating a list of "prequalified" trade contractors, G. L. c. 149A, § 8 (e)-(f); and the second consists of inviting all "prequalified" trade contractors to submit a bid on the project, G. L. c. 149A, § 8 (g). D.D.S. was prequalified to bid under this process and then, as the lowest qualified bidder, was awarded the contract. See G. L. c. 149A, § 8 (h).

Construction on the project began at some point in 2018. After the project encountered significant delays, the general contractor, Suffolk Construction Company (Suffolk), sent D.D.S. a series of notices of default, alleging that D.D.S. had failed to complete numerous items of work in a timely and satisfactory manner. D.D.S. responded by claiming that the delays were caused by scheduling issues, the COVID-19 pandemic, and, mostly, Suffolk itself.

On February 23, 2021, D.D.S.'s owner, Dwight Silvia, posted a lengthy message in a public Facebook group called "Fall River." The Fall River Reporter, a local newspaper, managed the group, which at the time had over twenty thousand members. In

2

the post Silvia criticized Suffolk's management of the project, alleging among other things that Suffolk was attempting to "cover up" "numerous deficiencies" in the construction; that the defective work would expose children attending the school to health and safety issues, such as mold and inadequate fire safety measures; and that "the Fall River taxpayer will continue to pay" for the problems caused by Suffolk's "poor construction practices." Silvia admitted that D.D.S. was responsible for "some minor problems" but claimed that these did not affect health or safety or the integrity of the building.

Leftfield received numerous telephone calls and requests for comment from local media as a result of Silvia's post. On February 24, 2021, Leftfield responded to the post by sending the letter that is the subject of this case. In the letter, addressed to the "Mayor of Fall River," Leftfield characterized Silvia's post as "misleading" and attributed the majority of the quality issues with the project to D.D.S. The letter went on to describe the quality issues, both those attributable to D.D.S. and those attributable to others, and the remedial steps taken to resolve them. On February 26, 2021, the mayor posted the letter on his own Facebook page.

A few months later, D.D.S. filed the underlying complaint against Leftfield. The complaint, which D.D.S. amended once,

3

identifies the following statements in Leftfield's letter as defamatory: D.D.S. was "responsible for most of the quality issues" on the project; and D.D.S. was "marginally qualified" to work on the project. After a hearing the judge allowed Leftfield's special motion to dismiss the amended complaint under the anti-SLAPP statute and awarded Leftfield its attorney's fees and costs.

Discussion. The anti-SLAPP statute "provides a procedural remedy -- the special motion to dismiss -- for early dismissal of SLAPP suits, i.e., 'lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'" Nyberg v. Wheltle, 101 Mass. App. Ct. 639, 645 (2022), quoting Blanchard v. Steward Carney Hosp., Inc., 477 Mass. 141, 147 (2017). A special motion to dismiss under the anti-SLAPP statute is evaluated under a two-stage, burden-shifting test. First, the moving party must demonstrate "through the pleadings and affidavits that the claims against it are 'based on' the [party's] petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." Bristol Asphalt Co. v. Rochester Bituminous Prods., Inc., 493 Mass. 539, 555 (2024), quoting Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 167-168 (1998). Second, if the moving

4

party makes that showing, the burden shifts to the special motion opponent to demonstrate that the moving party's "exercise of its right of petition 'was devoid of any reasonable factual support or any arguable basis in law' and . . . 'caused actual injury to the [special motion opponent].'" Bristol Asphalt Co., supra at 557, quoting G. L. c. 231, § 59H.[1]  Our review of a judge's decision on a special motion to dismiss is de novo. Bristol Asphalt Co., supra at 560.

1.  First stage.  "'[P]etitioning' has been consistently defined to encompass a 'very broad' range of activities in the context of the anti-SLAPP statute."  North Am. Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 861 (2009), quoting Duracraft, 427 Mass. at 162.  These activities include "any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding" and "any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding."  G. L. c. 231, § 59H.  "[A]ll

---

[1] In Bristol Asphalt Co., 493 Mass. at 553, which was decided while this appeal was pending, the court eliminated the so-called "second path" of the second stage, which had provided an alternative means by which an opponent could defeat a special motion.  D.D.S.'s opposition to Leftfield's motion did not, in any event, seek to rely on the second path.

statements made to influence, inform, or at the very least, reach governmental bodies -- either directly or indirectly" qualify as petitioning (quotations omitted).  North Am. Expositions Co. Ltd. Partnership, supra at 862.

Here, the sole basis of D.D.S.'s defamation claim is the letter that Leftfield sent to the city's mayor.  That letter constituted petitioning because it was a statement submitted to a representative of an executive body to inform him of issues related to an ongoing public construction project.  See North Am. Expositions Co. Ltd. Partnership, 452 Mass. at 862; Office One, Inc. v. Lopez, 437 Mass. 113, 122-123 (2002).  D.D.S.'s conclusory assertion that Leftfield wrote the letter not to seek redress for a grievance, but "in clear retaliation for D.D.S.'s Facebook post," does not take the letter outside the scope of petitioning.  See Bristol Asphalt Co., 493 Mass. at 563 ("neither a special motion proponent's identity, nor the motive behind its decision to engage in petitioning activity . . . , is relevant to the threshold inquiry"); Baker v. Parsons, 434 Mass. 543, 551 (2001) ("showing by the defendants that the claims against them were based on their petitioning activities alone [was] not defeated by the plaintiff's conclusory assertion that 'certain statements made by the defendants [in petitions to government officials] constitute[d] defamation'").

6

We are also unpersuaded by D.D.S.'s argument that the letter was not petitioning because Leftfield had no connection to the city beyond "a contractual relationship."  As an initial matter, D.D.S. waived this argument by failing to raise it to the judge.  See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).  And in any event, the case on which D.D.S. relies, Kobrin v. Gastfriend, 443 Mass. 327 (2005), does not support its position.  There, the court held that the special movant, a physician who was retained by a licensure board to act as its expert witness, was not engaged in petitioning when he produced an expert opinion pursuant to his contract with the board.  See id. at 333, 337-338.  Kobrin "rest[s] on the commonsense principle that a statute designed to protect the constitutional right to petition has no applicability to situations in which the government petitions itself."  Keegan v. Pellerin, 76 Mass. App. Ct. 186, 192 (2010).  See Cardno ChemRisk, LLC v. Foytlin, 476 Mass. 479, 490 (2017) (special movant in Kobrin not engaged in petitioning because he "spoke in the capacity of . . . a contracted government expert witness").  Here, Leftfield was exercising its own right to petition; it was not speaking on behalf of the government.  Kobrin does not apply in these circumstances.

2.  Second stage.  Because Leftfield met its burden at the first stage, the burden shifted to D.D.S. to show both that Leftfield's letter "was devoid of any reasonable factual support or any arguable basis in law" and that it caused "actual injury" to D.D.S.  Bristol Asphalt Co., 493 Mass. at 557, quoting G. L. c. 231, § 59H.  "[P]roving petitioning is 'devoid' of any reasonable factual support or any arguable basis in law is a difficult task," Bristol Asphalt Co., supra, akin to proving frivolousness, see id. at 559-560.  We conclude that D.D.S. failed to meet this burden and thus need not decide whether it has shown actual injury.

As mentioned, D.D.S.'s complaint identifies two statements in the letter as defamatory.  The first -- that D.D.S. was "responsible for most of the quality issues" on the project -- was not devoid of reasonable factual support (and does not implicate any law).  The letter goes on to describe in detail the quality issues attributable to D.D.S.  The description in the letter is supported by the exhibits that Leftfield submitted with its special motion, including the notices of default that Suffolk sent to D.D.S. and a "Punch List" dated August 26, 2021, identifying over 300 open items left for D.D.S. to remedy or complete.  In response to the special motion, D.D.S. submitted a single affidavit from Silvia in which he summarily asserted that

8

"D.D.S. was not responsible for the majority of the Project's issues, but rather the issues on the Project arose from Suffolk's deficiencies and delays."  This was insufficient to show that Leftfield's petitioning lacked any reasonable factual support.  See 477 Harrison Ave., LLC v. JACE Boston, LLC, 477 Mass. 162, 173 (2017) (special motion opponent "cannot meet its burden merely by presenting affidavits contradicting the factual basis of the special movant's petitioning activities").

The second statement identified as defamatory -- that D.D.S. was only "marginally qualified" to work on the project -- was also not devoid of reasonable factual support or an arguable basis in law.  Under G. L. c. 149A, § 8 (f), "[a]ll trade contractors who achieve a score of 70 points or greater [based on their responses to the RFQ] shall be prequalified to submit a bid."  It is undisputed that D.D.S. scored a 74.8 in the prequalification process.  In comparison, the other companies that responded to the RFQ achieved scores ranging between 83.8 and 90.2.  This supports Leftfield's characterization of D.D.S. as "marginally qualified."[2]

---

[2] D.D.S. argues otherwise on the ground that a trade contractor's prequalification score is not a public record. That is irrelevant to whether Leftfield's petitioning is devoid of a reasonable basis in fact or law.

9

On appeal D.D.S. asserts that Leftfield's letter contains the additional false statement that D.D.S. "was kept on the List of Bidders because they are a Fall River-based company." This statement is not identified in the complaint, however. Thus, it is not a basis of the defamation claim, see Kelleher v. Lowell Gen. Hosp., 98 Mass. App. Ct. 49, 53 n.2 (2020), or, in turn, a basis on which D.D.S. can meet its burden under the anti-SLAPP test. See Bristol Asphalt Co., 493 Mass. at 558 n.18 ("mere existence of an isolated 'untrue' or 'misleading' statement would not, in and of itself, mean that the petitioning activity was devoid of any reasonable factual support or arguable basis in law"). Moreover, even had D.D.S. adequately pleaded the claim, we agree with Leftfield that the statement in the letter can arguably be construed to be referring to the fact that D.D.S.'s local references earned it the minimum number of points required for prequalification. On D.D.S.'s evaluation form, the reviewer noted: "Meets minimum points but had to call 4 references to hit minimum in all categories. Similar experience and ability to do job as large as [the project] should be discussed." One of D.D.S.'s references was from a project in Fall River, and at least two others were from projects in the same county. The evaluation therefore provides colorable

10

support for Leftfield's statement.  See Bristol Asphalt Co.,
supra at 559-560.

3.  Appellate fees.  Leftfield has requested an award of
its appellate attorney's fees and costs.  It is entitled to such
an award.  See O'Gara v. St. Germain, 91 Mass. App. Ct. 490, 501
(2017).  Accordingly, within fourteen days of the date of this
decision, Leftfield may file an application for fees and costs.
The application shall be limited to those fees and costs
incurred in defending this appeal and shall not include any fees
or costs associated with postjudgment discovery efforts.  D.D.S.
may have fourteen days to respond.  See Fabre v. Walton, 441
Mass. 9, 10-11 (2004).

Judgment affirmed.

By the Court (Shin, Ditkoff &
  Brennan, JJ.[3]),

Clerk

Entered: November 12, 2024.

---

[3] The panelists are listed in order of seniority.

11